1  Daniel Cotman (Bar No. 218315)
   dan@cotmanip.com
2  Obi Iloputaife (Bar No. 192271)
3  obi@cotmanip.com
   Nelson E. Brestoff, of counsel (Bar No. 065291)
4  nick@cotmanip.com
5  Cotman IP Law Group, PLC
   117 E. Colorado Boulevard, Suite 460
6  Pasadena, CA  91105
7  (626) 405-1413/FAX (626) 628-0404
8
   Attorneys for Defendant
9  NEXTIVA, INC.
10

11              **UNITED STATES DISTRICT COURT**

12              **CENTRAL DISTRICT OF CALIFORNIA**

13

14 | J2 GLOBAL COMMUNICATIONS, | ) Case No.: CV 11-06450-DDP (AJWx)
15 | INC. AND ADVANCED         | )
16 | MESSAGING TECHNOLOGIES,   | ) **NEXTIVA'S OPENING MARKMAN**
   | INC.,                     | ) **BRIEF**
17 |                           | )
18 |         Plaintiff,        | )
   |    vs.                    | ) **DATE:**    June 28, 2013
19 |                           | ) **TIME:**    10:00 a.m.
20 | NEXTIVA, INC.,            | ) **CRTM:**    3
21 |                           | )
   |         Defendant.        | ) **DISC. CUT-OFF:** June 25, 2013
22 |                           | ) **PRE-TRIAL:**   October 7, 2013
23 |                           | ) **TRIAL:**       October 22, 2013
   |                           | )
24 |                           | ) **JUDGE:**   Hon. Dean D. Pregerson,
25 |                           | )              Judge Presiding
26 |                           | )
   |                           | )              Hon. Andrew J. Wistrich,
27 |                           | )              Magistrate Judge

28 / / /

---

I
**NEXTIVA'S OPENING MARKMAN BRIEF**

# TABLE OF CONTENTS

**Contents**

I.   BACKGROUND OF THE CASE ............................................................................ 1

II.  RULES OF PATENT CLAIM CONSTRUCTION ............................................ 1

III. THE MEANINGS OF THE IDENTIFIED CLAIM TERMS ........................... 5

   A.   Inbound Address ............................................................................................ 5

   B.   User-Specific Message Storage Area ............................................................ 7

IV.  CONCLUSION ................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*Amkor Tech., Inc. v. Int'l Trade Comm'n*, 692 F.3d 1250 (Fed. Cir. 2012) ............... 4

*Atlantic Thermo Plastic Co., Inc. v. Faytex Corp.*, 974 F.2d 1299 (Fed. Cir. 1992) .. 3

*Brookhill-Wilk 1, LLC. v. Intuitive Surgical, Inc.*, 334 F.3d 1294 (Fed. Cir. 2003) ... 1

*Helmsderfer v. Bobrick Washroom Equipment, Inc.*, 527 F.3d 1379 (Fed. Cir. 2008) 1

*In re Paulsen*, 30 F.3d 1475 (Fed. Cir. 1994) .............................................................. 4

*Johnson Worldwide Associates, Inc. v. Zebco Corp.*, 175 F.3d 985 (Fed, Cir, 1999) 3

*Kopykake Enterprises, Inc. v. Lucks Co.*, 264 F.3d 1377 (Fed. Cir. 2001) ................. 3

*Lighting World, Inc. v. Birchwood Lighting, Inc.*, 382 F.3d 1354 (Fed. Cir. 2004) ... 3

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) .............. 1, 3, 4

*Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313 (Fed.Cir.2005) ........................... 2

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) ............................................. 2

*Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243 (Fed. Cir. 1998) ....... 3

*Southwall Technologies, Inc. v. Cardinal IG Co.*, 54 F.3d 1570 (Fed. Cir. 1995) . 3, 6

*Spansion Inc. v. Int'l Trade Comm'n*, 629 F.3d 1331 (Fed. Cir. 2010) ...................... 4

*Tate Access Floors, Inc. v. Interface Architectural Res., Inc.*, 279 F.3d 1357 (Fed. Cir. 2002) ................................................................................................................ 2

*Teleflex, Inc. v. Ficosa North America Corp.*, 299 F.3d 1313 (Fed. Cir. 2002) ......... 2

*Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 375 F.3d 1341 (Fed.Cir.2004) .... 2, 9

*VFormation, Inc. v. Benetton Group SpA*, 401 F.3d 1307 (Fed.Cir.2005) ................. 2

*Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576 (Fed. Cir. 1996) ............... 2, 4, 5

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.     BACKGROUND OF THE CASE

Plaintiff contends that Defendant Nextiva's accused products infringe claims 13 and 19-21 of United States Patent No. 6,208,638 ("the '638 Patent"), claims 36-41 and 43-48 of United States Patent No. 6,350,066 ("the '066 Patent"), and claim 19 of U.S. Patent No. 7,020,132 ("the '132 Patent").  The parties have stipulated to constructions on a large majority of the terms for the patents involved in this dispute. However, the parties disagree on the meaning of the term "inbound address" in the '638 Patent and on the meaning of the term "user-specific message storage area" in the '066 Patent.

## II.    RULES OF PATENT CLAIM CONSTRUCTION

While the Court is undoubtedly familiar with the rules of patent claim construction, Nextiva briefs the law here for the sake of thoroughness and reference in the discussion of the two claim terms at issue.

The scope of rights granted by a patent is defined by the claims.  *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970-1 (Fed. Cir. 1995).  It is the Court's function to interpret the meaning of the claim terms as a matter of law.  *Id*. Determining the proper meaning of a claim must begin and remain centered on the actual claim language, because the patentee chose to use that language to "particularly point out and distinctly claim the subject matter which the patentee regards as his invention." *Brookhill-Wilk 1, LLC. v. Intuitive Surgical, Inc.*, 334 F.3d 1294, 1298 (Fed. Cir. 2003) (internal cites omitted); *Helmsderfer v. Bobrick Washroom Equipment, Inc.*, 527 F.3d 1379, 1383 (Fed. Cir. 2008) ("The patentee chooses the language and accordingly the scope of his claims.").  This primary focus on the claim language flows from the above-mentioned "bedrock principle" that the scope of an invention is defined solely by the claims. *Phillips v. AWH Corp.*, 415

F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (internal cites omitted); *see also Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) ("the words of the claims themselves ... define the scope of the patented invention"); *see also Phillips*, 415 F.3d at 1312 ("[T]he claims are of primary importance, in the effort to ascertain precisely what it is that is patented.").

The Court should presume that the terms in the claim mean what they say to one of ordinary skill in the art. *See Phillips,* 415 F.3d at 1313 (holding "the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification."); *see also Tate Access Floors, Inc. v. Interface Architectural Res., Inc.*, 279 F.3d 1357, 1370 (Fed. Cir. 2002); *Teleflex, Inc. v. Ficosa North America Corp.*, 299 F.3d 1313, 1324 (Fed. Cir. 2002). If a claim term has a plain and ordinary meaning, the Court should review the specification to determine if the inventor used any terms in a manner inconsistent with its ordinary meaning. *See Vitronics*, 90 F.3d at 1582 ("it is always necessary to review the specification to determine whether the inventor has used any terms in a manner inconsistent with their ordinary meaning."); *see also Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1319 (Fed. Cir. 2005) ("We cannot look at the ordinary meaning of the term ... in a vacuum. Rather, we must look at the ordinary meaning in the context of the written description and the prosecution history."); *VFormation, Inc. v. Benetton Group SpA*, 401 F.3d 1307, 1310 (Fed. Cir. 2005) (intrinsic record "usually provides the technological and temporal context to enable the court to ascertain the meaning of the claim to one of ordinary skill in the art at the time of the invention"); *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 375 F.3d 1341, 1351 (Fed. Cir. 2004) (the proper definition is the "definition that one of ordinary skill in the art could ascertain from the intrinsic evidence in the record.")

Thus, if a claim term has a plain and ordinary meaning to one of ordinary skill in the art, the inquiry ends.

In construing the claim terms, the Court should rely on the intrinsic evidence (i.e., the patent claims, the written patent specification, and the patent prosecution history). The prosecution history is consulted to see if there is any disavowal of scope during prosecution. *See Southwall Technologies, Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995) ("The prosecution history limits the interpretation of claim terms so as to exclude any interpretation that was disclaimed during prosecution."). "A patent applicant only limits claims during prosecution by clearly disavowing claim coverage." *Kopykake Enterprises, Inc. v. Lucks Co.*, 264 F.3d 1377, 1382 (Fed. Cir. 2001); *see Markman*, 52 F.3d at 980. Any such limitation must be the result of language that is clear, deliberate, and precise. *See Johnson Worldwide Associates, Inc. v. Zebco Corp.*, 175 F.3d 985, 991 (Fed. Cir. 1999); *see also Atlantic Thermo Plastic Co., Inc. v. Faytex Corp.*, 974 F.2d 1299, 1301 (Fed. Cir. 1992) ("[A]mbiguous prosecution history cannot trump unambiguous claim language.").

In the end, the construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be the correct construction. *See Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998) ("Ultimately, the interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim.").

Generally, a patent's intrinsic record does not warrant consideration of extrinsic evidence. Thus, where a patent's claims, written description, and prosecution history are complete and unambiguous, the court need not resort to extrinsic evidence such as treatises, technical references, or expert testimony. However, where the intrinsic record leaves ambiguities and unresolved questions, the court may consider extrinsic evidence, including expert testimony. *Phillips*, 415 F.3d at 1317–18; *Lighting World, Inc. v. Birchwood Lighting, Inc.*, 382 F.3d 1354, 1359 (Fed. Cir. 2004). Extrinsic evidence must be "given the appropriate weight by

1  the trial court." *Amkor Tech., Inc. v. Int'l Trade Comm'n*, 692 F.3d 1250, 1259-60
2  (Fed. Cir. 2012) (quoting *Spansion Inc. v. Int'l Trade Comm'n*, 629 F.3d 1331, 1344
3  (Fed. Cir. 2010); see also *Phillips*, 415 F.3d at 1322–23 ("judges are free to consult
4  dictionaries and technical treatises at any time in order to better understand the
5  underlying technology and may also rely on dictionary definitions when construing
6  claim terms, so long as the dictionary definition does not contradict any definition
7  found in or ascertained by a reading of the patent documents." (Internal citations
8  omitted)).  However, such extrinsic evidence should always be viewed with caution.
9  *Vitronics*, 90 F.3d at 1585.  In any event, extrinsic evidence cannot vary the terms of
10 the claims or otherwise contradict the intrinsic record. *Markman*, 52 F.3d at 981.
11 Accordingly, expert testimony inconsistent with the intrinsic record has little if any
12 probative value.  *Vitronics*, 90 F.3d at 1584–85. ("[E]ven if the judge permissibly
13 decided to hear all the possible evidence before construing the claim, the expert
14 testimony, which was inconsistent with the specification and file history, should
15 have been accorded no weight.").

16  The presumption of ordinary meaning of claim terms may be overcome if an
17 accused infringer clearly establishes:  (1) the patentee defined the disputed claim
18 term in a deliberate and precise manner contrary to the ordinary meaning; (2) there
19 has been an express disclaimer of the subject matter; (3) the term in issue deprives
20 the claim of such clarity such that the scope of the claim cannot be ascertained from
21 the language used; or (4) the claim has been limited by the use of "step" or "mean-
22 plus-function" terms.

23  Of these, the most important exception, applicable here, is this:  A patentee
24 may choose to be his own lexicographer by assigning a novel definition to a claim
25 term, but any such term must be defined "with reasonable clarity, deliberateness, and
26 precision."  *In re Paulsen*, 30 F.3d 1475, 1480 (Fed. Cir. 1994); *see also Vitronics,*
27 90 F.3d at 1582 ("[t]he specification acts as a dictionary when it expressly defines
28 terms used in the claims or when it defines terms by implication.  As we have

repeatedly stated, '[c]laims must be read in view of the specification, of which they are a part.'")

## III. THE CLAIM TERMS AT ISSUE

The parties agree that the Court's construction is needed for the term "inbound address" as used in the '638 Patent, and for the term "user-specific message storage area" as used in the '066 Patent. Nextiva's proposed constructions for these two terms are discussed below.

### A. Inbound Address

| CLAIM | CLAIM TERM | j2 PROPOSED DEFINITION AND EXEMPLARY SUPPORT | NEXTIVA PROPOSED DEFINITION AND EXEMPLARY SUPPORT |
|---|---|---|---|
| | **U.S. Patent No. 6,208,638** | | |
| 13, 19, 20 | inbound address | the telephone or fax number to which the audio message is being transmitted<br><br>Claim Construction Order, DI-205, March 4, 2011; Case No. 09-CV-04150-DDP-AJW | the number that a message sender dials on a telephone unit or a facsimile unit to leave a message for the user.<br><br>See '638, col 3, lines 53-57 |

Nextiva's position is that the patentee defined the term "inbound address" in column 3, lines 54-57 of the specification and accordingly the term must take the definition stated in the specification. *See Vitronics,* 90 F.3d at 1582 ("[t]he specification acts as a dictionary when it expressly defines terms used in the claims or when it defines terms by implication. As we have repeatedly stated, '[c]laims must be read in view of the specification, of which they are a part.'" (Internal citations omitted).

1    Plaintiff j2 cites the Court's Claim Construction Order of March 4, 2011 (Case No. 09-CV-04150-DDP-AJW) which discussed the '638 Patent as the basis for supporting the construction that the term "inbound address" means "the telephone or fax number to which the audio message is being transmitted." However, Nextiva respectfully submits that this Court never adopted that construction, and that doing so would be inconsistent with the patentee's definition: "the <u>inbound address *is* the number that a message sender dials on telephone unit 110 or facsimile unit 120 to leave a message for the user</u>."  '638 Patent at column 3, lines 53-57 [Emphasis Added].

As the Court can readily see, by using "*is*" after "inbound address" and then following with a definition, the patentee has created a verbal equation.  That equivalency is a controlling definition which should not now be expanded for purposes of litigation.  *See Southwall Technologies*, 54 F. 3d at 1578 ("Even if Southwall could show that 'sputter-deposited dielectric' has a meaning to one skilled in the art different from the definition in the '745 specification and file history, the definition in the patent documents controls the claim interpretation.").  "A patentee may not proffer an interpretation for the purposes of litigation that would alter the indisputable public record consisting of the claims, the specification and the prosecution history, and treat the claims as a "nose of wax." *Id*.

If the patentee meant to define the term only for a particular embodiment, he/she could have used non-limiting phrases such as: in one or more embodiments; for instance; in the embodiment described herein; for example; etc.  Instead, the term "inbound address" is used throughout both the patent specification and prosecution history in a manner that is consistent with Nextiva's proposed construction.  For example:

- column 3, lines 53-54 states "the inbound address corresponds to the telephone number assigned to the user."

- column 3, lines 2-10, for example, the specification discusses that the system utilizes both telephone units and facsimile units for its implementation."
- And Claim 13 itself states that the inbound address is "uniquely associated with a user account," and logic thus dictates that the claim is referring to the <u>telephone or fax</u> <u>number that a message sender dials on a telephone unit or facsimile unit to leave a message for the user</u>.

Given that the specification defines what an inbound address "**is,**" and because there is nothing else in the specification which contradicts that definition, Nextiva respectfully submits that the Court should adopt its proposed construction of an "inbound address:"  "<u>the number that a message sender dials on telephone unit or facsimile unit to leave a message for the user</u>."

### B.  User-Specific Message Storage Area

| CLAIM | CLAIM TERM | j2 PROPOSED DEFINITION AND EXEMPLARY SUPPORT | NEXTIVA PROPOSED DEFINITION AND EXEMPLARY SUPPORT |
|---|---|---|---|
| | **U.S. Patent No. 6,350,066** | | |
| 36, 41, 43, 48 | user-specific message storage area | an area within a storage medium that stores messages for a recipient in a manner that identifies the message uniquely to the recipient<br><br>Claim Construction Order, DI-205, March 4, 2011; Case No. 09-CV-04150-DDP-AJW | one or more directories specifically allocated to a user where the user's messages are stored<br><br>See '066 patent, col 12, lines 32-38; col 16, lines 57-60. |

The parties also dispute the meaning of the term "user-specific message storage area" as used in the '066 patent, particularly as it relates to claims 36-41 and 43-48.  Nextiva respectfully submits that the term, "user-specific message storage

1 area," when read in light of the specification and prosecution history, means "one or more directories specifically allocated to a user where the user's messages are stored."

This proposed construction is consistent with the Court's rationale in its Markman Order, but differs from the construction in that Nextiva respectfully submits that the construction previously given is inconsistent with the ordinary meaning of the claim, the specification and the prosecution history of the '066 Patent.

Previously, in its Claim Construction Order of March 4, 2011, which construed the term "user-specific message storage area", this Court stated "the specification explains that '[i]n the preferred embodiment, the **files for each user are stored in a separate directory for a given user** …' ('066 Patent 12:32-39.) However, '[t]he memory may be organized in other ways with the **files for a single user being stored in different directories**.' (Id.)" [Emphasis Added]

The Court's characterization of the '066 Patent specification is accurate. However, the construction given does not account for the very support in the specification cited as the basis for the construction – namely that user files may be stored in a separate, i.e., one or more, directories.

Nextiva proposes a construction for "user-specific message storage area" consistent with the ordinary meaning of the claim language and the '066 Patent specification. Stepping back, the task is to construe the "message storage area" which contains a "user-specific message." The phrase "user-specific," while not used in the patent specification, is equivalent to a portion of the "message storage area" that is "specific to a user."

In other words, the "message storage area" consists of one or more directories in which a user-specific message resides.

As the Court previously pointed out, the meaning of the phrase "message storage area" is apparent from the specification. It is well known in the art that a

storage medium may be configured into one or more directories for storing files. Files may be stored in one directory or in several directories. The specification is consistent with this general understanding of one of ordinary skill in the art. In Col. 12, lines 32-38, the '066 Patent specification states:

> In the preferred embodiment, the files for each user are <u>stored in a separate</u> directory assigned to just that one user because an entire directory for a given user generally can be protected easier than the individual files. The memory, however, may be organized in other ways with the files for a single user being <u>stored in different directories</u>. [Emphasis Added]

Also, in Col. 16, lines 57-60, the '066 Patent states: "Preferably, <u>a separate directory</u> in storage 11 is established for each user having an account on the MSDS 10 so that all of the messages for a single user will be <u>stored in the same directory</u>. [Emphasis Added]. The above cited sections of the specification show that the inventor contemplated the phrase "message storage area" to include "a separate directory" and/or "different directories." Thus, a definition that encompasses both, such as: <u>one or more directories for storing messages</u>, is appropriate. *See Unitherm Food*, 375 F.3d at 1351 (the proper definition is the "definition that one of ordinary skill in the art could ascertain from the intrinsic evidence in the record").

In the specification, and especially the sections quoted above, the patentee used the phrase "for a single user" when referring to the message storage area. In describing the preferred embodiment, the patentee said "<u>the files for each user are stored in a separate directory assigned to just that one user</u> because an entire directory for a given user generally can be protected easier than the individual files." [Emphasis Added]. In the very next sentence the patentee said "The memory, however, may be organized in other ways with <u>the files for a single user being stored in different directories</u>" when referring to other embodiments. In reading these two

sentences in their entirety, what the patentee disclosed is one or more directories allocated to a single user where the user's files are stored.

The prosecution history confirms Nextiva's proposed construction. One of the reasons stated by the Examiner that the '066 Patent was allowed during reexamination was because of the limitation "user-specific storage area" over the prior art (e.g. US Patent No. 5,557,659 to Hyde-Thompson) which had a "generalized storage area." *See the Reexamination Prosecution History of '066 patent*, page 24 ("in the examiner's opinion, it would not have been obvious to one of ordinary skill in the art to have the feature that requires a user interface expressed as a sequence of markup language instructions, whereby the user interface provides one or more links to respective messages stored in the <u>user-specific message storage area</u>." [Emphasis Added]

Accordingly, Nextiva respectfully submits that the proper construction of the term "user-specific message storage area" is "one or more directories for storing messages that is specific to a user where the user's messages are stored." This construction is true to the claim language, specification and the prosecution history, and should be adopted by the Court.

Therefore, the disputed term should be construed as "<u>one or more directories for storing messages that is specific to a user where the user's messages are stored</u>."

## IV. <u>CONCLUSION</u>

For the above reasons, Nextiva respectfully requests that the Court adopt its proposed claim constructions.

///
///
///
///

Dated: May 24, 2013                    Cotman IP Law Group, PLC

                                       s/Daniel C. Cotman
                                By: _____
                                       Daniel Cotman
                                       Obi Iloputaife
                                       Nelson E. Brestoff, *of counsel*

                                       *Attorneys for Defendant Nextiva, Inc.*

# CERTIFICATE OF SERVICE

I hereby certify that on May 24, 2013, I electronically filed the foregoing **NEXTIVA'S OPENING MARKMAN BRIEF** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | | |
|---|---|---|
| **Frank L Bernstein**<br>Kenyon & Kenyon LLP<br>333 W San Carlos Street Suite 600<br>San Jose, CA 95110<br>408-975-7500<br>408-975-7501 (fax)<br>fbernstein@kenyon.com | representing | **j2 Global Communications Inc**<br>*(Plaintiff)*<br>**Advanced Messaging Technologies Inc**<br>*(Plaintiff)* |
| **Brian R England**<br>**Edward Eric Johnson**<br>**Robert A Sacks**<br>Sullivan and Cromwell LLP<br>1888 Century Park East Suite 2100<br>Los Angeles, CA 90067-1725<br>310-712-6600<br>310-712-8800 (fax)<br>englandb@sullcrom.com<br>johnsonee@sullcrom.com<br>sacksr@sullcrom.com | representing | **j2 Global Communications Inc**<br>*(Plaintiff)*<br>**Advanced Messaging Technologies Inc**<br>*(Plaintiff)* |

Dated:  May 24, 2013

                   s/Elaine Cruz
                   _____
                   Elaine Cruz