Robert A. Sacks (SBN 150146)
sacksr@sullcrom.com
Brian R. England (SBN 211335)
englandb@sullcrom.com
Edward E. Johnson (SBN 241065)
johnsonee@sullcrom.com
SULLIVAN & CROMWELL LLP
1888 Century Park East, Suite 2100
Los Angeles, California 90067-1725
Tel.: (310) 712-6600
Fax: (310) 712-8800

Frank L. Bernstein (SBN 189504)
fbernstein@kenyon.com
KENYON & KENYON LLP
1801 Page Mill Road, Suite 210
Palo Alto, California 94304-1216
Tel.: (650) 384-4700
Fax: (650) 384-4701

*Attorneys for Plaintiffs j2 Global, Inc. and Advanced Messaging Technologies, Inc.*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| j2 GLOBAL COMMUNICATIONS, INC. and ADVANCED MESSAGING TECHNOLOGIES, INC. <br><br> Plaintiff, <br><br> v. <br><br> NEXTIVA, INC. <br><br> Defendant. | Case No. 11-CV-06450 DDP (AJWx) <br><br> **PLAINTIFFS J2 GLOBAL, INC. AND ADVANCED MESSAGING TECHNOLOGIES, INC.'S OPENING *MARKMAN* BRIEF** <br><br> Date: June 28, 2013 <br> Time: 10:00 a.m. <br> Courtroom: 3 |

**Table of Contents**

I. Introduction ........................................................................................................... 1

    A. The Legal Standard for Claim Construction .......................................... 2

II. U.S. Patent 6,208,638 ............................................................................................ 5

    A. The '638 Patent Describes and Claims a Fax/Voice Processing System 5

    B. "Inbound Address" Means "The Telephone or Fax Number to Which the Audio Message Is Being Transmitted" ........................................... 6

III. U.S. Patent 6,350,066 .......................................................................................... 10

    A. The '066 Patent Describes and Claims a Message Processing System for Storing Messages for a User and Enabling the User to Retrieve the Stored Messages Remotely, Over the Internet ....................................... 10

    B. As the Court Correctly Construed the Term, "User-Specific Message Storage Area" Means "An Area Within a Storage Medium That Stores Messages for a Recipient in a Manner that Identifies the Message Uniquely to the Recipient" .................................................................................. 12

IV. Conclusion ........................................................................................................... 15

KENYON & KENYON LLP
PALO ALTO

PLAINTIFFS' OPENING *MARKMAN* BRIEF

# Table of Authorities

**Cases**

*Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282 (Fed. Cir. 2009) ............................ 5, 15

*Acumed LLC v. Stryker Corp.*, 483 F.3d 800 (Fed. Cir. 2007) ................................ 6

*Arlington Indus. v. Bridgeport Fittings, Inc.*, 632 F.3d 1246 (Fed. Cir. 2011) .......... 5

*Cohesive Technologies, Inc. v. Waters Corp.*, 543 F.3d 1351 (Fed. Cir. 2008) ....... 4

*Computer Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366 (Fed. Cir. 2008) ...... 5

*DSW, Inc. v. Shoe Pavilion, Inc.*, 537 F.3d 1342 (Fed. Cir. 2008) ........................... 5

*E.I. Du Pont De Nemours & Co. v. Phillips Petroleum Co.*,
    849 F.2d 1430 (Fed. Cir. 1988) ............................................................................ 4

*Every Penny Counts, Inc. v. American Express Co.*,
    563 F.3d 1378 (Fed. Cir. 2009) ............................................................................ 3

*Felix v. American Honda Motor Co., Inc.*, 562 F.3d 1167 (Fed. Cir. 2009) ............ 4

*Gemtron Corp. v. Saint-Gobain Corp.*, 572 F.3d 1371 (Fed. Cir. 2009) .................. 3

*Honeywell Int'l, Inc. v. Universal Avionics Systems Corp.*,
    493 F.3d 1358 (Fed. Cir. 2007) ............................................................................ 3

*i4i Ltd. Partnership v. Microsoft Corp.*, 580 F.3d 1246 (Fed. Cir. 2009) ........... 5, 15

*i4i Ltd. Partnership v. Microsoft Corp.*, 598 F.3d 831 (Fed. Cir. 2010) ................... 5

*Intervet Am., Inc. v. Kee-Vet Labs., Inc.*, 887 F.2d 1050 (Fed. Cir. 1989) ......... 4, 11

*Kara Tech. Inc. v. Stamps.com Inc.*, 582 F.3d 1341 (Fed. Cir. 2009) ................ 5, 11

*Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898 (Fed. Cir. 2004) ..................... 5

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995)
    (en banc), *aff'd* 517 U.S. 370 (1996). .............................................................. 2, 4

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351
    (Fed. Cir. 2008) .................................................................................................... 3

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc) ............. 2, 3, 4, 11

*Renishaw PLC v. Marposs Societa' per Azioni*,
    158 F.3d 1243 (Fed. Cir. 1998) ............................................................................ 3

*Thorner v. Sony Computer Entertainment America LLC*,
   669 F.3d 1362 (Fed. Cir. 2012) ................................................................................ 6

*Verizon Servs. Corp. v. Vonage Holdings Corp.,* 503 F.3d 1295 (Fed. Cir. 2007)... 5

*Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576 (Fed. Cir. 1996) ..................... 4

*Wavetronix LLC v. EIS Electronic Integrated Systems*,
   573 F.3d 1343 (Fed. Cir. 2009) ............................................................................... 2

## I. Introduction

Plaintiffs j2 Global, Inc. and Advanced Messaging Technologies, Inc. (collectively, "j2") respectfully submit this opening *Markman* brief.

j2 is asserting three patents against Nextiva, Inc. ("Nextiva") in this Action: USP 6,208,638 ("the '638 Patent"); USP 6,350,066 ("the '066 Patent"); and USP 7,020,132 ("the '132 Patent") (collectively, the "Patents-in-Suit"). The terms of these three patents previously have been construed by this Court in related litigation.[1] In those cases, five defendants represented by three separate law firms submitted hundreds of pages of briefing, and the Court held two claim construction hearings. Ultimately the Court construed a total of 21 terms. It later reaffirmed several of those constructions in denying a motion for reconsideration.

For the most part, the parties here have agreed to adopt the Court's previous constructions. The Joint Claim Construction Statement (Docket No. 37) sets forth the terms upon which the parties have agreed. There are only two disputed claim terms remaining for the Court to construe: one from the '638 Patent[2] ("inbound address") which has not been construed; and one from the '066 Patent[3] ("user-specific message storage area"), a term which the Court has construed previously[4]. There are no disputed claim terms from the '132 Patent.

With respect to the term "inbound address," Nextiva seeks to limit the term to a disclosed embodiment in the '638 Patent, by mandating the use of

---

[1] These patents were the subject of claim construction rulings in *j2 Global Communications, Inc., et al.* v. *Captaris, Inc., et al.*, No. 09-4150 DDP and *j2 Global Communications, Inc.* v. *EasyLink Services International Corp.*, No. 09-4189 DDP.

[2] The '638 Patent is Exhibit A to the Declaration of Frank L. Bernstein ("Bernstein Decl.") filed herewith.

[3] Bernstein Decl., Ex. B.

[4] *j2 Global Communications, Inc.* v. *Captaris, Inc.*, No. 11-cv-4150 DDP (C.D. Cal.), DI-205 (Bernstein Decl., Ex. C (the "2011 *Markman* Order")).

- 1 -

specifically disclosed hardware. As j2 will discuss, such a limitation is contrary to law, and so the Court should reject imposing such a limitation.

The Court previously construed the term "user-specific message storage area" in the 2011 *Markman* Order. Here, j2 proposes the definition which the Court adopted. Nextiva points to nothing in the record that was not before the Court when it ruled before, or to any change in the law that would lead to a different result. In fact, in construing this term, Nextiva seeks to impose a limitation that is not found anywhere in the '066 Patent, and finds support nowhere in the record. The Court should reaffirm its previous construction.

As j2 will explain in more detail herein, the technology at issue relates to user receipt and transmission of facsimile and telephone messages over the Internet, and to ways of making those messages available to users. The '638 Patent relates to a method for accomplishing reliable transmission of voice or facsimile messages to users in e-mail form. The '066 Patent relates to a method or system for making voice or facsimile messages available to users over the Internet.

**A.  The Legal Standard for Claim Construction**

Claim construction is an issue of law, based on the public record of the patent claims, the patent specification (including the drawings), and the prosecution history. *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 970-71 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). The Court determines the ordinary and customary meaning of undefined claim terms as understood by a person of ordinary skill in the art at the time of the invention. *Phillips v. AWH Corp.,* 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc). *See also Wavetronix LLC v. EIS Electronic Integrated Systems*, 573 F.3d 1343, 1356 (Fed. Cir. 2009).

The purpose of claim construction is to determine the meaning and scope of the patent claims that the plaintiff alleges have been infringed. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.,* 521 F.3d 1351, 1360 (Fed. Cir. 2008). "The construction that stays true to the claim language and most naturally aligns

with the patent's description of the invention will be, in the end, the correct construction." *Phillips,* 415 F.3d at 1316 (*quoting Renishaw PLC v. Marposs Societa' per Azioni,* 158 F.3d 1243, 1250 (Fed. Cir. 1998)); *see also Every Penny Counts, Inc. v. American Express Co.*, 563 F.3d 1378, 1381 (Fed. Cir. 2009); *Honeywell Int'l, Inc. v. Universal Avionics Systems Corp.*, 493 F.3d 1358, 1362 (Fed. Cir. 2007).

> In construing patent claims,
>
> the court looks to those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean. Those sources include the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art.

*Id.* at 1314 (internal quotation marks and citations omitted); *see also Gemtron Corp. v. Saint-Gobain Corp.*, 572 F.3d 1371, 1377 (Fed. Cir. 2009); *Felix v. American Honda Motor Co., Inc.*, 562 F.3d 1167, 1177 (Fed. Cir. 2009); *Cohesive Technologies, Inc. v. Waters Corp.*, 543 F.3d 1351, 1360 (Fed. Cir. 2008).

Because the claims define the scope of the patent's protection, naturally "the claims themselves provide substantial guidance as to the meaning of particular claim terms." *Phillips,* 415 F.3d at 1314. Further, the claims "must be read in view of the specification, of which they are a part." *Markman,* 52 F.3d at 979. A patent's specification provides necessary context for understanding the claims, and "is always highly relevant to the claim construction analysis." *Phillips,* 415 F.3d at 1315 (quoting *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582 (Fed. Cir. 1996)).

Although the specification is always relevant, the Federal Circuit has cautioned that courts must avoid importing limitations from the specification into the claims. The Federal Circuit "has consistently adhered to the proposition that courts cannot alter what the patentee has chosen to claim as his invention, that

-3-

limitations appearing in the specification will not be read into claims, and that interpreting what is *meant* by a word *in* a claim 'is not to be confused with adding an extraneous limitation appearing in the specification, which is improper.'" *Intervet Am., Inc. v. Kee-Vet Labs., Inc.,* 887 F.2d 1050, 1053 (Fed. Cir. 1989) (quoting *E.I. Du Pont De Nemours & Co. v. Phillips Petroleum Co.,* 849 F.2d 1430, 1433 (Fed. Cir. 1988) (emphasis original)); *see also DSW, Inc. v. Shoe Pavilion, Inc.*, 537 F.3d 1342, 1347 (Fed. Cir. 2008).

When the specification describes an embodiment to enable the invention, broader claim language should not be limited to that single application "unless the patentee has demonstrated a clear intention to limit the claim scope using 'words or expressions of manifest exclusion or restriction.'" *Abbott Labs.* v. *Sandoz, Inc.*, 566 F.3d 1282, 1288 (Fed. Cir. 2009) (*citing Liebel-Flarsheim Co. v. Medrad, Inc.,* 358 F.3d 898, 906 (Fed. Cir. 2004)).  By the same token, not every benefit flowing from an invention is a claim limitation.  *i4i Ltd. Partnership v. Microsoft Corp.*, 580 F.3d 1246, 1259 (Fed. Cir. 2009) (*citing Computer Docking Station Corp. v. Dell, Inc.,* 519 F.3d 1366, 1374 (Fed. Cir. 2008); *Verizon Servs. Corp. v. Vonage Holdings Corp.,* 503 F.3d 1295, 1302-03 (Fed. Cir. 2007)).

Limitations should not be imported from the specification into the claims without a "clear intention to limit the claim scope." *Arlington Indus. v. Bridgeport Fittings, Inc.*, 632 F.3d 1246, 1254 (Fed. Cir. 2011); *i4i Ltd. Partnership v. Microsoft Corp.*, 598 F.3d 831, 843 (Fed. Cir. 2010); *see also Kara Tech. Inc. v. Stamps.com Inc.*, 582 F.3d 1341, 1348 (Fed. Cir. 2009) ("a patentee is entitled to the full scope of his claims and [a court] will not limit him to his preferred embodiment or import a limitation from the specification into the claims."); *Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 807-09 (Fed. Cir. 2007); *Thorner v. Sony Computer Entertainment America LLC*, 669 F.3d 1362, 1368-69 (Fed. Cir. 2012)).

## II. U.S. Patent 6,208,638

### A. The '638 Patent Describes and Claims a Fax/Voice Processing System

The '638 Patent relates to the handling of inbound telephone or facsimile messages. These messages, termed "audio messages," are received, processed into digital representations, and sent to the end recipient.

Figure 1 of the '638 Patent describes a preferred, non-limiting embodiment that includes a telephone unit 110 and a facsimile unit 120, both of which are shown as being connected to a circuit switched network 130.



FIG. 1

The incoming voice and fax calls described above naturally have an intended destination on a circuit-switched network. In the '638 Patent, that destination is found in the inbound address, *i.e.*, the telephone or fax number to which the audio message is being transmitted. After receiving an incoming call signal, the communications server checks whether the inbound address

-5-

corresponds to a valid user account and whether the server currently is capable of handling the call. If both questions are answered in the affirmative, the server processes the incoming call signal, puts the audio message into digital form (*e.g.*, a PDF or a TIFF for a fax message or in pulse code modulated format for a voice message) and sends the converted message to a destination address on a packet-switched network (*e.g.*, an e-mail address) associated with the user account. '638 Patent, col. 5, line 10 – col. 6, line 53.

### B. "Inbound Address" Means "The Telephone or Fax Number to Which the Audio Message Is Being Transmitted"

The parties have proposed the following definitions for the claim term "inbound address":

| Claim Term | j2 Proposed Definition | Nextiva Proposed Definition |
|---|---|---|
| inbound address | the telephone or fax number to which the audio message is being transmitted | the number that a message sender dials on a telephone unit or a facsimile unit to leave a message for the user |

Both definitions require that the "inbound address"—which tells the system to where to route the fax or voice message—be a telephone or fax number. The most significant difference between j2's proposed definition and Nextiva's proposed definition is that Nextiva's definition ties the telephone or fax number to a particular embodiment in the '638 Patent—specifically, the embodiment including a telephone unit 110 or facsimile unit 120, which are described at col. 3, lines 2-8. Nextiva's approach is improperly limiting, and should be rejected.

*First*, the claims support j2's proposed definition. Asserted claim 13 of the '638 Patent is illustrative and reads as follows (emphasis added):

> 13. A method comprising:
> 
> receiving a first incoming call signal destined for a first communications server for processing of an audio message into a digital representation;

-6-

> determining if a first condition has occurred;
>
> redirecting the first incoming call signal from the first communications server to a second communications server based on the determining of the first condition, wherein the first ***incoming call signal includes a particular inbound address*** uniquely associated with a user account and at least one destination address on a packet switched network, and wherein the particular ***inbound address*** remains unchanged during the redirecting;
>
> extracting the particular ***inbound address***;
>
> determining, based on the particular ***inbound address***, a user account status and the at least one destination address on the packet switched network; and,
>
> sending the digital representation to the at least one destination address, wherein the particular ***inbound address*** is uniquely assigned to the user account and the at least one destination address comprises at least one email address.

This makes clear that the inbound address is part of the call signal and is used to route the message. j2's proposed definition captures all of those elements. Nothing in claim 13 (or any other claim reciting an inbound address) says anything about the specific hardware used by the sender to input the inbound address. This alone is sufficient to reject Nextiva's proposed construction.

*Second*, the specification supports j2's proposal as well. Read as a whole, the description of the invention makes clear that while the use of a telephone or fax number to route the message is a key aspect of the invention, the particular method and hardware used to send the message is immaterial.

Nextiva points to a single passage from the specification of the '638 Patent, col. 3, lines 53-57, which states:

> The ***inbound address*** corresponds to the telephone number assigned to the user. As further discussed below, the inbound address is the number that a message sender dials on telephone unit 110 or facsimile unit 120 to leave a message for the user.

(emphasis added). This passage refers to the "telephone unit" and "facsimile unit" that appear in Nextiva's proposed definition, but, more importantly, states that the

-7-

inbound address corresponds to the telephone number assigned to the user. The import of the quote is that the inbound address is a number. The mention of the hardware on which that number is dialed, besides being merely a preferred embodiment, is unnecessary, as the rest of the specification shows. *Every subsequent mention of the inbound address in the '638 Patent is devoid of any mention of such hardware.* Rather, every subsequent mention of the inbound address focuses (like j2's definition) on the number assigned to the user:

- "The set of final destination address contain one or more e-mail addresses where the user account status information indicates whether the inbound address is either active and or inactive--i.e, whether the user is able to receive messages using the system." (Col. 3, lines 57-61, emphasis added.)

- Database server 195 stores a duplicate copy of the *inbound address*, the set of final destination addresses; and the account status for each user. (Col. 3, lines 62-64, emphasis added.)

- Continuing with block 404, to determine whether or not to process the incoming call, processor 151 searches the list of *inbound addresses* contained in memory subsystem 153 for the destination address. If processor 151 finds the destination address in the *inbound address* list, processor 151 will then look up the account status for the user who owns the *inbound address* to determine if the account of that user is a valid user account. (Col. 5, lines 19-26, emphasis added.)

- In block 420, communications server 150 uses the *inbound address* to determine the set of final destination addresses, which are destinations on WAN 180 (i.e., the packet switched network), to send the processed incoming message. (Col. 6, lines 46-50, emphasis added.)

All of these references to "inbound address" are to the inbound address of the user—the number to which messages for the user are sent—and not to the hardware on which the number is dialed. Nextiva's insistence on including that hardware is not only embodiment-specific, but also inconsistent with and irrelevant to the subsequent discussion of the term in the rest of the '638 Patent.

-8-

Moreover, Nextiva has agreed that the "incoming call signal," as used in asserted Claim 13, includes the inbound address. DI-37. But the agreed definition of incoming call signal is devoid of any reference to hardware. It is inconsistent with Nextiva's position to assert that "inbound address" has a hardware limitation when Nextiva's definition of a term that includes "inbound address" does not.

While claim terms should be construed in light of the patent specification, it is legal error to import into the claim limitations from the specification. *Phillips,* 415 F.3d at 1323. There is a difference between construing a term appearing in a claim, and adding a limitation that is not there in the first place. *Id.* The former is permissible; the latter is not. *Id.* In particular, the description of an embodiment in the specification does not, without more, limit the claims to that single embodiment. *Id.* at 1323 ("we have expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment"). *See also Kara Tech., supra*; *Intervet, supra*. Here, Nextiva's attempt improperly to limit the claims to a single embodiment by importing the limitation that the user must send a message from a "facsimile unit" or "telephone unit" should be rejected.

*Third*, Nextiva has identified nothing in the prosecution history supporting the limitation it seeks to impose.

*Fourth*, j2's definition is more clear and understandable. Nextiva's definition includes two terms, "facsimile unit" and "telephone unit," which are not commonly-used and not defined, and therefore likely to leave jurors scratching their heads. Nextiva's definition also would require that the sender be "leaving a message" for the recipient, which might make sense in the context of voicemail, but is confusing in the context of a fax message. j2's definition, on the other hand, is clear and straightforward.

For all these reasons, the Court should reject Nextiva's proposed construction, and adopt j2's.

### III. U.S. Patent 6,350,066

#### A. The '066 Patent Describes and Claims a Message Processing System for Storing Messages for a User and Enabling the User to Retrieve the Stored Messages Remotely, Over the Internet

The '066 Patent describes a system for storing voicemail, facsimile, and data messages and enabling a user to retrieve them remotely. In one implementation, shown in Fig. 1, a fax machine 24, a phone 26, and a computer 28 are connected to a central office 20. A standard connection to a central office is a public switched telephone network, or PSTN. The central office 20 is connected to a message storage and delivery system (MSDS) 10, which in turn may be connected to a personal computer 32 via a user request. As the name implies, the MSDS stores messages for later user access. In the described embodiment, the user accesses the MSDS through the World Wide Web (shown as a cloud 30). *See*, *e.g.,* col. 7, line 18 to col. 8, line 16.

-10-



**FIG 1**  **FIG 13**

Figure 13 shows one embodiment of the MSDS, with a central processor 3 which receives messages and stores them in storage 11 for subsequent retrieval. *See, e.g.,* col. 16, line 55 *et seq.*

When a user wants to access messages, he/she requests access to the MSDS by attempting to log into the system. A program running in the background on the MSDS 10 verifies that the user is entitled to access. That background program is called a deamon. The mode of communication that the user employs to access messages is a type of protocol referred to generally as hypertext transfer protocol, or HTTP. HTTP is a standard medium of communication over the World Wide Web. *See, e.g.,* '066 Patent, col. 21, lines 48-50. HTTP allows "linking"

-11-

from one Web page to another. The HTTP deamon, or HTTPD 37, in the MSDS 10 receives requests from a user in HTTP format and retrieves messages for the user.

### B. As the Court Correctly Construed the Term, "User-Specific Message Storage Area" Means "An Area Within a Storage Medium That Stores Messages for a Recipient in a Manner that Identifies the Message Uniquely to the Recipient"

The Court construed this term in the 2011 *Markman* Order. Here, j2 proposes adopting the Court's construction. The parties' respective proposals are as follows:

| Claim Term | j2 Proposed Definition | Nextiva Proposed Definition |
|---|---|---|
| user-specific message storage area | an area within a storage medium that stores messages for a recipient in a manner that identifies the message uniquely to the recipient | one or more directories specifically allocated to a user where the user's messages are stored |

Interestingly, Nextiva's proposed construction is quite similar to the construction that Captaris proposed, and which the Court rejected:

| Claim Term | Nextiva Proposed Definition | Captaris Proposed Definition |
|---|---|---|
| user-specific message storage area | one or more directories specifically allocated to a user where the user's messages are stored | a portion of a storage medium, such as a directory, that is specifically allocated for storing all of the message files for a particular intended recipient |

The key similarity between Captaris's rejected definition and Nextiva's proposed definition is that both require directories or other storage media to be "specifically allocated" to each user. Those words do not appear anywhere in the patent and there is nothing in the '066 Patent that requires such a limitation. The '066 Patent requires that messages be stored in a manner that allows only the recipient to retrieve them. That requirement is captured by the Court's construction, which is clear and understandable. Nextiva's attempt to impose a

-12-

further limitation that a user's messages are stored in "specifically allocated" directories is contrary to the specification, as shown by the two portions of the '066 Patent specification that Nextiva cites: col. 12, lines 36-38 and col. 16, lines 56-60. To provide context, col. 12, lines 32-38 are as follows[5]:

> The files may be identified with any suitable filename. In the preferred embodiment, the files for each user are stored in a separate directory assigned to just that one user because an entire directory for a given user generally can be protected easier than the individual files. The memory, however, may be organized in other ways with the files for a single user being stored in different directories.

The Nextiva-cited portion of col. 16 of the '066 Patent states further:

> The central processor 3 receives the calls on the DID trunks 15 and stores the messages in storage 11 in accordance with software 7. ***Preferably***, a separate directory in storage 11 is established for each user having an account on the MSDS 10 so that all of the messages for a single user will be stored in the same directory.

'066 Patent, 16:55-60 (emphasis added).

Thus, the Patent describes various ways for storing messages. The portion of col. 16 on which Nextiva relies, using the word "preferably," relates back to the preferred embodiment at the beginning of the quoted portion of col. 12. However, the specific passage that Nextiva cites, col. 12, lines 36-38, expressly states that the memory "may be organized in other ways with the files for a single user being stored in different directories." The passage does not state that the directories must be *specifically allocated* to that user—on the contrary, it indicates that the particular structure chosen for storage is not material to the invention. The preferred embodiment is a single directly for each user, but other approaches, such as multiple directories, also may be used.

---

[5] This is the portion of the '066 Patent specification which the Court cited in its Claim Construction Order in the 4150 Action. (Bernstein Decl., Ex. C at 15.)

-13-

When a patent specification describes a preferred embodiment to enable the invention, broader claim language should not be limited to that single application "unless the patentee has demonstrated a clear intention to limit the claim scope using 'words or expressions of manifest exclusion or restriction.'" *Abbott Labs.*, 566 F.3d at 1288; *see also i4i*, *supra*. Here the patentee demonstrated the opposite, by stating in the specification that alternative methods of storage may be used.

In short, the '066 Patent requires only that messages be stored in a manner that allows only the recipient to retrieve them, and expressly contemplates storage of a recipient's messages across different directories. There is no requirement, as Nextiva would impose, that each such directory stores messages only for that recipient. The portion of the '066 Patent which is quoted above, and which the Court cited in its 2011 *Markman* Order (Bernstein Decl., Ex. C at 15), does not exclude the possibility that one user's messages may be stored in a directory that also includes other users' messages, so long as each message is uniquely associated with a user.

For the foregoing reasons, j2 requests that the Court maintain its previous construction of the term "user-specific message storage area": "an area within a storage medium that stores messages for a recipient in a manner that identifies the message uniquely to the recipient."

## IV. Conclusion

For the foregoing reasons, the Court should adopt j2's proposed definition of "inbound address" in the '638 Patent. The Court also should maintain its current construction of the term "user-specific message storage area" in the '066 Patent.

Dated: May 24, 2013                    Respectfully submitted,

                                                        /s/Frank L. Bernstein
Robert A. Sacks (Cal. Bar No. 150146)
Brian R. England (Cal. Bar No. 211335)
Edward E. Johnson (Cal. Bar No. 241065)
SULLIVAN & CROMWELL LLP
1888 Century Park East
Los Angeles, California 90067-1725
(310) 712-6600
(310) 712-8800 facsimile

Frank L. Bernstein (Cal. Bar No. 189504)
KENYON & KENYON LLP
1801 Page Mill Road, Suite 210
Palo Alto, California 94304-1216
Tel.: (650) 384-4700
Fax: (650) 384-4701

*Attorneys for Plaintiffs j2 Global, Inc. and Advanced Messaging Technologies, Inc.*