1  Daniel Cotman (Bar No. 218315)
   dan@cotmanip.com
2  Obi Iloputaife (Bar No. 192271)
3  obi@cotmanip.com
   Cotman IP Law Group, PLC
4  117 E. Colorado Boulevard, Suite 460
5  Pasadena, CA  91105
   (626) 405-1413/FAX (626) 628-0404
6

7  Attorneys for Defendant and Counter-Claimant
8  NEXTIVA, INC.
9  *[CONT'D ON PAGE 2]*

10              **UNITED STATES DISTRICT COURT**

11              **CENTRAL DISTRICT OF CALIFORNIA**

12

13  j2 GLOBAL COMMUNICATIONS,        ) Case No.:  2:11-CV-06450-DDP (AJWx)
14  INC. and ADVANCED MESSAGING      )
    TECHNOLOGIES, INC.               ) **OPPOSITION TO PLAINTIFFS'**
15                                   ) **MOTION TO STRIKE**
16                                   ) **DEFENDANT'S AFFIRMATIVE**
              Plaintiff,             ) **DEFENSES AND DISMISS**
17       v.                          ) **DEFENDANT'S COUNTERCLAIMS**
18                                   ) **FOR INEQUITABLE CONDUCT,**
    NEXTIVA, INC.                    ) **UNFAIR COMPETITION, AND**
19                                   ) **VIOLATIONS OF THE**
20            Defendant.             ) **CARTWRIGHT ACT.**
                                     )
21  ——————————————————————————      )
    NEXTIVA, INC.,                   )
22                                   ) **INCLUDES:**
              Counter Claimant,      )
23                                   )
         v.                          ) **DECLARATION OF OBI**
24                                   )    **ILOPUTAIFE**
    j2 GLOBAL COMMUNICATIONS,        ) **DECLARATION OF J. CURTIS**
25  INC. and ADVANCED MESSAGING      )    **EDMONDSON**
    TECHNOLOGIES, INC.,              ) **DECLARATION OF JOSH LESAVOY**
26                                   )
              Counter Defendants.    ) **REQUEST FOR JUDICIAL NOTICE**
27  ——————————————————————————      )
28  ——————————————————————————

1  J. Curtis Edmondson, P.E. (CA SBN 236105)
   Law Offices of J. Curtis Edmondson
2  Venture Commerce Center
3  3699 NW John Olsen Place
   Hillsboro, OR 97124
4  (503) 336-3749
5  (503) 482-7418 fax
6  jcedmondson@edmolaw.com

7

8  Attorneys for Defendant and Counterclaimant,

9  NEXTIVA, INC.

10

11  //

12  //

13  //

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

I.    INTRODUCTION ............................................................................................ 1

II.   NEXTIVA HAS ADEQUATELY PLED FACTS SUFFICIENT TO ALLEGE
INEQUITABLE CONDUCT DURING THE *EX PARTE* REEXAMINATIONS OF
THE '980 PATENT ............................................................................................ 2

   A.   Undisputed Facts regarding the j2 Initiated ExParte Reexamination ............ 4

     i)   The '980 Chain of Title ................................................................. 4

     ii)   The prior '980 Litigation history ................................................... 4

   B.   Nextiva Meets The Requirements To Prove A Claim Of Inequitable
Conduct ............................................................................................................. 5

     i)   Legal Standard .............................................................................. 5

     ii)   Nextiva alleges "but-for" materiality and specific intent. ............................ 6

     iii)   j2 intended to insulate itself from claims of inequitable conduct by over-
disclosing references during reexamination of the '980 Patent............................ 7

III.   NEXTIVA HAS ADEQUATELY PLED THAT J2 IS LIABLE FOR A
COMPETITVE BUSINESS INJURY BY FAILING TO PROVIDE NUMBER
PORTABILITY ................................................................................................ 9

   A.   Undisputed Facts – j2 does not provide number portability ........................ 9

   B.   Nextiva has Sufficiently Pled an Anticompetitive Injury under the
Cartwright Act. ............................................................................................. 10

     i)   Nextiva has adequately stated a claim under the Cartwright Act (Cal. Bus. &
Prof. Code § 16720) .................................................................... 11

     ii)   Nextiva has not waived a tying claim under the Cartwright Act.............. 13

     iii)   Nextiva has a claim under the Unfair Practice Act................................. 13

1    IV.   NEXTIVA HAS ADEQUATELY PLED THAT J2 IS LIABLE UNDER THE

2    UNFAIR COMPETITION CLAIM AS NEXTIVA HAS SUFFERED A

3    COMPETITIVE INJURY DUE TELEPHONE NUMBER NON-PORTABILITY  14

4    V.   CONCLUSION.................................................................................. 14

# TABLE OF AUTHORITIES

**Cases**

*Asahi Kasei Pharma Corp. v. Cotherix, Inc*., (Cal App 2012) 204 Cal.App.4th 1 .......................... 11

*Bell Atl. Corp. v. Twombly* (2007) 550 U.S. 544 ............................................................ 11

*Belton vs. Comcast Cable Holdings, LLC* (2007) 151 Cal App. 1224 ............................................ 13

*Bolkcom v. Carborundum Co*., (6th 1975)  523 F.2d 492 ................................................. 3

*Cellular Plus, Inc. v. Superior Court* (Cal.App. 4 Dist., 1993) 14 Cal.App.4th 1224.................... 11

*Exergen Corp. v. Wal-Mart Stores*, 575 F.3d 1312 (Fed. Cir. 2009) ............................................. 6

*Fishermans Wharf Bay Cruise Group vs. Superior Court* (2003) 114 Cal App 4th 309 ................ 14

*J2 Global Commc'n, Inc. v. City of L.A.* B241151 7/26/2013 (Cal. App., 2013) ........................... 10

*Kolling v. Dow Jones & Co.,* (1982) 137 Cal.App.3d 709 ............................................. 11

*Parkervision Inc. v. Qualcomm Incorporated*, Case No. 3:11-cv-719-J-37TEM ........................... 7

*Therasense, Inc. v. Becton-Dickinson & Co.*, 649 F.3d 1276 (Fed. Cir. 2011) (*en banc*)............. 6, 8

**Statutes**

Bus & Prof Code §§17200 ........................................................................................ 14

Cal Bus & Prof Code §§ 17043 and 17044 ................................................................. 13

Cal Bus & Prof Code §16727 ................................................................................... 13

OPPOSITION TO PLAINTIFFS' MOTION TO DISMISS and/or MOTION TO STRIKE

<u>**OPPOSITION TO PLAINTIFFS' MOTION**</u>

Defendant Nextiva, Inc. ("Nextiva") respectfully requests that this Court deny Plaintiffs' j2 Global Communications, Inc. and Advanced Messaging Technologies, Inc. (collectively "j2"), motion to dismiss and/or strike.

On the inequitable conduct claims, Nextiva's allegations reference documents that are subject to judicial notice, i.e. the public filewrapper of the Ex-Parte Reexamination that was initiated by j2. The filewrapper provides sufficient facts that a claim of inequitable conduct can be sustained.

j2 then agrees they do not allow telephone number portability. Instead j2 argues that the Cartwright Act or California's Unfair Competition Laws are inapplicable to their anti-consumer behavior. Nextiva has pled these claims sufficiently by even attaching j2's own customer agreement as an exhibit to the First Amended Cross Complaint. This Court should reject j2's request to dismiss the claims relating to number portability.

In the event that this Court finds Nextiva's pleadings as insufficient, Nextiva respectfully requests leave of this Court to amend the first amended cross complaint to cure these defects.

## I.    INTRODUCTION

j2's motion seeks partial dismissal and striking of Nextiva's answer and cross-complaint. (j2's Motion to Dismiss at 1, "MTD").     j2 has asked this Court to dismiss and/or strike:

- Inequitable conduct claims about the *Ex Parte* reexamination of U.S. Patent 6,020,980  (MTD pgs 4-7) and the related affirmative defenses; and

- Cartwright Act claims about "number porting" or "number portability" (MTD pgs 7-9); and

- Lack of Standing under an Unfair Competition Claim (MTD pgs 9-10).

Given that these three arguments are factually and legally separate, Nextiva presents these arguments separately.

To support these arguments, references have been made to Nextiva's First Amended Cross Complaint ("FACC"), Nextiva's Second Amended Answer to j2's First Amended Complaint ("SAA"), and certain documents from that USPTO and FCC that can be judicially noticed.  ("RJN").


## II. NEXTIVA HAS ADEQUATELY PLED FACTS SUFFICIENT TO ALLEGE INEQUITABLE CONDUCT DURING THE *EX PARTE* REEXAMINATIONS OF THE '980 PATENT

When the Court considers j2's arguments regarding inequitable conduct, it is important to distinguish between *Ex Parte* reexaminations and regular patent prosecution.

As a threshold issue, Congress has defined what is required when prior art is cited to the patent office after the patent has issued. 35 USC §301.  This statute reads in part:

> (a) IN GENERAL.--Any person at any time may cite to the Office in writing--

> (1) prior art consisting of patents or printed publications which that person believes to have a bearing on the patentability of any claim of a particular patent; or

> (2) statements of the patent owner filed in a proceeding before a Federal court or the Office in which the patent owner took a position on the scope of any claim of a particular patent.

    (b) OFFICIAL FILE.--If the person citing prior art or written statements pursuant to subsection (a) <u>explains in writing the pertinence and manner of applying the prior art or written statements to at least 1 claim of the patent, the citation of the prior art or written statements and the explanation thereof shall become a part of the official file of the patent.</u>

    *Ex Parte* reexaminations are subject to different statutory provisions (35 USC §§302-307), are conducted under different procedural rules (MPEP §§2209-2296), and are regulated under a different section of the Code of Federal Regulations (37 CFR §§1.510-570).  *Ex Parte* reexamination proceedings occur while the patent is enforceable[1].

    Why is this important?  Because, the general rule is that if patent references are considered by the USPTO, then those references "strengthen" the patent.  As stated in *Bolkcom v. Carborundum Co*., (6th 1975)  523 F.2d 492, 498:

> In applying this test [for patent validity] , we begin with the principle that every patent issued by the patent office carries, at the outset, a presumption of validity,35 U.S.C. § 282, which is justified by the "complexities of patent law and the expertise of the patent office." Monroe Auto Equipment Co. v. Heckethorne Mfg. & Supply Co., 332 F.2d 406, 412 (6th Cir.), Cert. denied, 379 U.S. 888, 85 S.Ct. 160, 13 L.Ed.2d 93 (1964). And where the most pertinent prior art has been considered by the patent office, the presumption is greatly strengthened. Tapco Products Co. v. Van Mark Products Corp., 446 F.2d 420 (6th Cir.), Cert. denied, 404 U.S. 986, 92 S.Ct. 451, 30 L.Ed.2d 370 (1971). See also Great Lakes Equipment Co. v. Fluid Systems, Inc., 217 F.2d 613, 617 (6th Cir. 1954). Conversely, "where applicable prior art has not been considered by the Patent Office this presumption is greatly weakened." Dunlop Company, Ltd. v. Kelsey-Hayes Co., 484 F.2d 407, 413 (6th Cir. 1973), Cert. denied, 415 U.S. 917, 94 S.Ct. 1414, 39 L.Ed.2d 471 (1974), Monroe Auto Equipment Co., supra…

---

[1] The patent owner can also elect to have the USPTO "reissue" their patent. 35 USC 251, MPEP 1401, 37 CFR 1.171.  But in a reissue proceeding the patent is returned to the patent office.

**OPPOSITION TO PLAINTIFFS' MOTION TO DISMISS and/or MOTION TO STRIKE**

In a nutshell, if patent owner can have the patent office "consider" the prior art, without having to explain the art, as is required by the rules (35 USC §301) then the patent appears to be strengthen, without undergoing the acid test of characterization that the *Ex Parte* Reexamination patent rules require.

*Therasense* and its progeny deal with allegations that involve acts during patent prosecution. Overdisclosure cannot occur during prosecution. But, no case has dealt with the issue of analyzing inequitable conduct claims during an *Ex Parte* reexamination and the patent owners failure to follow the statutory provisions of 35 USC 301, et. seq.

So the question is whether j2's act of submitting over 400+ uncharacterized references during the *Ex Parte* reexamination was merely a negligent act, or whether this overcitation was a willful act that was designed to have the 400+ references placed on the certificate without detailed consideration by the Examiner.

When these facts are considered by this Court and construed in Nextiva's favor, it is clear that Nextiva's claims and affirmative defenses should survive.

A.      **Undisputed Facts regarding the j2 Initiated ExParte Reexamination**

    i)      **The '980 Chain of Title**

The '980 Patent has a filing date of July 1, 1997. The inventor, Michael B. Freeman apparently worked for MCI. (RJN 1). MCI then merged into Worldcom. *Id.* Worldcom then went bankrupt in 2002 and was subsequently purchased by Verizon. Verizon then sold the '980 patent to j2 on July 5, 2012 (approximately 15 years after the application date). *Id.*

    ii)     **The prior '980 Litigation history**

At the time of the '980 patent assignment j2 was litigating with Easylink. (See CD CAL 12-cv-07968-DDP-AJW ).   J2 then filed a separate lawsuit against Easylink asserting infringement of the '980 patent.

j2 initiated then requested a stay of the proceedings in view of the '980 patent.   The petition for the *Ex Parte* reexamination consisted of j2 characterizing a single reference to the "RightFax" product.

This petition was accepted by the USPTO. (See generally RJN 2-1 ).   During the *Ex Parte* reexamination the USPTO told j2 that the multitude of references would not be considered without characterization.   In each response j2 simply ignored the Examiner and piled on more references.

j2 claims that Nextiva has not pled the "who", "what", "where", and "when" regarding reference burying during the *Ex Parte* reexamination of the '980 patent. These facts regarding the amount of submissions are publically available in the USPTO filewrapper, but this brief will illustrate how Nextiva has a viable claim of inequitable conduct as against j2.

**B.**   **Nextiva Meets The Requirements To Prove A Claim Of Inequitable Conduct.**

     **i)**   **Legal Standard**

Under Federal Circuit law, inequitable conduct is viewed as a type of fraud subject to the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure:

> [M]oreover, although 'knowledge' and 'intent' may be averred generally, a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonable infer that a specific individual (1) knew of the withheld material information or of the falsity of the material

misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO.

*Exergen Corp. v. Wal-Mart Stores*, 575 F.3d 1312, 1328-29 (Fed. Cir. 2009).

In the *Therasense* opinion, the Federal Circuit "tightened the standards for finding both intent and materiality in order to redirect a doctrine that has been overused to the detriment of the public," because "the inequitable conduct doctrine has plagued not only the courts but the entire patent system." *Therasense, Inc. v. Becton-Dickinson & Co.*, 649 F.3d 1276, 1289-90 (Fed. Cir. 2011) (*en banc*).  This tightened standard severed the "sliding-scale" link between intent and materiality; *i.e.*, intent to deceive cannot be inferred from materiality alone.  *Id.* at 1290.  Further, *Therasense* established "but-for" materiality is generally required and clarified that clear and convincing evidence of deceptive intent means that a specific intent to deceive the PTO must be "the single most reasonable inference able to be drawn from the evidence." *Id.* at 1290-91.

### ii)   Nextiva alleges "but-for" materiality and specific intent.

Nextiva can amend its inequitable conduct allegations in Count VIII of its Counterclaims, and in its Twenty-First and Twenty-Third Affirmative Defenses in the event these judicially noticeable documents are inadequate.  As such its inequitable conduct pleading will comply with Fed. R. Civ. P. 9(b) by stating the "who, what, when, where, and how" of the alleged misrepresentation to the PTO. (See Edmondson Declaration.)

In addition, the amended pleading will include (1) "but-for" materiality by alleging that each and every element required by Claim 1 of the '980 Patent is disclosed by a material reference, U.S. Pat. No. 6,072,862 (the "'862 Patent"), and (2) specific intent to deceive the PTO by alleging the '862 Patent was "buried"

OPPOSITION TO PLAINTIFFS' MOTION TO DISMISS and/or MOTION TO STRIKE

among hundreds of other references in the '980 Patent reexamination proceeding, a post-issuance proceeding. *Id.*

### iii)   j2 intended to insulate itself from claims of inequitable conduct by over-disclosing references during reexamination of the '980 Patent.

Nextiva, with leave to amend alleges the duty of candor and good faith has been violated by individuals substantively involved in the reexamination proceedings of the '980 Patent, including in particular "burying" the Central Reexamination Unit ("CRU") of the PTO with hundreds of references so as to distract the CRU's attention from highly relevant references. (See RJN Ex 2-2).

The district court of the Middle District of Florida, Jacksonville Division discussed the allegations of "burying" in *Parkervision Inc. v. Qualcomm Incorporated*, Case No. 3:11-cv-719-J-37TEM.   There, Defendant, Counterclaim Plaintiff, Qualcomm, in support of the inequitable conduct defense alleged ParkerVision "buried" the PTO examiner with hundreds of references so as to distract his attention from highly relevant references.  *See Parkervision*, (Doc. No. 91, ¶ 12.). Qualcomm claimed that beneath the numerous references provided to the PTO "were a handful of highly relevant references . . . that, if they had been called to the [e]xaminer's full attention, would have precluded issuance of the pending claims." (Id.)

In *Parkervision* the district court determined that specific intent could not be inferred merely from the allegations of burying and that the theory, therefore, failed as a matter of law. *See Parkervision Inc. v. Qualcomm Incorporated*, Case No. 3:11-cv-719-J-37TEM. "Qualcomm's assertions that ParkerVision provided voluminous references in order to 'distract' the PTO examiner cannot meet this standard.  *Id.*

Taking into account the practice of bringing inequitable conduct claims against a patentee for under-disclosing references, an equally if not more reasonable inference is that ParkerVision aimed to insulate itself from such claims by over-disclosing references. *See Therasense*, 649 F.3d at 1287 (noting that specific intent to deceive must be 'the single most reasonable inference able to be drawn from the evidence.' (*quoting Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1366 (Fed. Cir. 2008) (internal quotation marks omitted)). Because specific intent to deceive is not the only or single most reasonable inference to be drawn from the disclosure of voluminous references to the PTO, Qualcomm's pleading of the 'burying' theory fails as a matter of law." *See Parkervision Inc. v. Qualcomm Incorporated*, Case No. 3:11-cv-719-J-37 attached as RJN 3.

Here, Nextiva offers that the facts are distinguishable from *ParkerVision* in that the "burying" occurred during the '980 Patent reexamination, some 15 years after the '980 was originally applied for. Specifically, as shown in the file history of the Reexamination Certificate, the applicant filed four separate Information Disclosure Statements (IDS) throughout the reexamination prosecution process. (*See* RJN 2-2*)*

During the reexamination prosecution, the first IDS, filed on September 14, 2012 disclosed three U.S. Patents and 21 other documents of non-patent literature. The second IDS was filed on December 3, 2012 and included 31 U.S. Patents, 26 foreign patents, and 197 documents of non-patent literature.  The third IDS filed on April 1, 2013 included one U.S. Patent and 34 documents of non-patent literature and the fourth IDS filed on April 24, 2013 included four U.S. Patents and 13 documents of non-patent literature.  In total, 430 prior art references were filed by the applicant which included 139 U.S. Patents, 26 foreign patents, and 265 documents of non-patent literature.

Further, the Primary Examiner from the CRU noted:

> [T]he Information Disclosure Statement of September 14, 2012 has been considered.  It is to be noted, however, that where patents, publications, and other such items of information are submitted by a patent owner in compliance with the requirements of the rules, **the requisite degree of consideration to be given to such information will be limited by the degree to which the patent owner has explained the content and relevance of the information.** (original **emphasis** retained).(See RJN 2-3.)

But IDS submission after IDS submission, the applicant/patent owner continually failed to characterize the prior art for the CRU. (See RJN 2-4.)

In addition, the applicant/patent owner continually declared before the PTO during the reexamination that:

> "…the information be expressly considered during the prosecution of this application, and that the references be made of record therein and appear among the 'References Cited' on any Reexamination Certificate to issue therefrom."   (RJN 2-4)

Accordingly, the only or single most reasonable inference to be drawn from this conduct of over-disclosure in a reexamination proceeding and further failing to characterize and provide any explanation of content and relevance for the information found in the disclosures is specific intent to deceive.

## III.   NEXTIVA HAS ADEQUATELY PLED THAT J2 IS LIABLE FOR A COMPETITVE BUSINESS INJURY BY FAILING TO PROVIDE NUMBER PORTABILITY

### A.   <u>Undisputed Facts – j2 does not provide number portability</u>

**OPPOSITION TO PLAINTIFFS' MOTION TO DISMISS and/or MOTION TO STRIKE**

A consumer's telephone number can be a valuable asset that involves significant collateral investment by the consumer and the loss of that number can also result in data privacy breaches.  (FACC, ¶¶ 131-132)

j2 is a telecommunications provider and provides telephone numbers to their customers.  (FACC, ¶¶ 119-124, 174;  *See* RJN 1 - *J2 Global Commc'n, Inc. v. City of L.A. B241151* 7/26/2013 (Cal. App., 2013); (MTD pg 2). j2 is the dominant market participant for supplying facsimile telephone numbers to consumers with over 90% of their 2012 revenue attributable to telephonic services. (FACC, ¶¶ 126-128).

j2 acquires their consumers telephone numbers from other telecommunication providers. RJN 1 at   *J2 Global Commc'n, Inc. v. City of L.A. B241151* 7/26/2013 (Cal. App., 2013)).

j2's customer service agreement prevents consumers from "porting out" their telephone numbers that have not been "ported in". (FACC, ¶¶ 130, 133-137, 176; FACC Ex. 1).   Nextiva is a competitor and has pled a competitive harm. (FACC, ¶¶ 181;  See RJN 2)

j2 does not dispute these facts, it rather states that as a matter of law, failing to allow consumers telephone number portability is permissible.

**B.**     **Nextiva has Sufficiently Pled an Anticompetitive Injury under the Cartwright Act.**

j2 argues that Nextiva has failed to plead an anticompetitive injury. (MTD at pg. 3, ln 20 to pg. 4, ln 5).

The focus of the Cartwright Act is "…on the punishment of violators for the larger purpose of promoting free competition". *Asahi Kasei Pharma Corp. v.*

*Cotherix, Inc.*, (Cal App 2012) 204 Cal.App.4th 1, 7.   Central to this act is that consumers are to be protected from business practices that harm consumers.

Competitors, such as Nextiva, have standing to assert Cartwright Act claims because Nextiva has alleged an injury that the Cartwright Act was intended to cover. *Cellular Plus, Inc. v. Superior Court* (Cal.App. 4 Dist., 1993) 14 Cal.App.4th 1224, 1233.

The standard for sufficient pleading is that mere legal conclusions of law will not satisfy the Rule 8 pleading standards. *Bell Atl. Corp. v. Twombly* (2007) 550 U.S. 544, 555.   In *Twombly* the allegations were that an agreement existed, but there was no concrete evidence of the agreement. As stated in *Twombly*, "…it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Id.* at 555.

j2 does not dispute that the FACC has the agreement attached herein as Exhibit 1.   So clearly the FACC meets the *Twombly* test for factual allegations.


i)      **Nextiva has adequately stated a claim under the Cartwright Act (Cal. Bus. & Prof. Code § 16720)**

j2's position is that the Cartwright Act is inapplicable as Nextiva has failed to present facts sufficient to satisfy each of these elements. (MTD at 7).

j2's reliance on *Asahi Kasei Pharma Corp v. CoTherix, Inc.* (2012) 204 Cal App 4th 1 is misplaced for the rule of law regarding "single actors".   *Asahi* is about the applicability of the Cartwright Act to corporate mergers.   This case is not about corporate mergers, rather it is about j2's refusal to allow consumers the right to move their telephone numbers to competitive systems.

*Asahi* did not overrule the holding of *Kolling v. Dow Jones & Co.,* (1982) 137 Cal.App.3d 709, a case involving vertical restraints of trade .   Factually, *Kolling*

(distribution of newspapers) is much closer to this dispute ( distribution of fax documents), than *Asahi* (merger of biotechnology companies).

In *Kolling,* two independent paper distributors brought Cartwright Act claims against Dow Jones & Co. in connection with the distribution of the Wall Street Journal. *Id.* The Superior Court found the Dow Jones & Co. liable for Cartwright Act violations. *Id.* Dow Jones & Co. appealed arguing that there could be no Cartwright Act violation since Dow Jones & Co. was a "single actor". The Court of Appeals affirmed the judgment of the Superior Court.

In *Kolling* this rule of law was pronounced with regard to "single actor" or "single trader" restraints under the Cartwright Act:

> If a "single trader" pressures <u>customers</u> or dealers into adhering to resale price maintenance, territorial restrictions, <u>exclusive dealing arrangements</u> or illegal "tie-ins," an unlawful combination is established, irrespective of any monopoly or conspiracy, and despite the recognized right of a producer to determine with whom it will deal. *Kolling* at 805, citing to Albrecht v. Herald Co., (1968) 390 U.S. 145, 149.  (Emphasis added).

Here j2's own customer agreement attached as Ex 1 to the FACC clearly states that their consumers cannot "port-out" their telephone numbers.   This agreement clearly is an illegal tie-in that *Kolling* contemplated as meeting the "single trader" rule of law.   But, in the event a clear conspiracy must be alleged, then Nextiva can allege that the CLEC who provides the numbers to j2 are contributors to this illegal act.

j2 next argues that Nextiva has failed to assert that preventing number portability is an illegal act. (MTD at 8, lns 10-12).  Nextiva has asserted that j2 violated FCC rules and regulations regarding number portability. (FACC ¶ 168, Motion at 2).

Lastly, j2 next argues that Nextiva has failed to allege any damage. (Motion at 8). This is inaccurate. The FACC presents a detailed template that j2 does not provide telephone number portability. Also the FACC clearly alleges that number portability damages Nextiva. (See FACC at ¶176 stating …This contractual condition [the j2 user agreement] prevents the porting of the customer's telephone number to a competitive provider…; FACC at ¶179, …j2's refusal to port numbers acts as a prohibition that prevents consumers from purchasing competitive fax services…).

### ii)    Nextiva has not waived a tying claim under the Cartwright Act

j2's footnote on page 8 argues that Nextiva has waived a tying claim. Cal Bus & Prof Code §16727. This is inaccurate as Nextiva has pled facts that demonstrate j2 ties their sale of virtual fax services to the telephone number. *Belton vs. Comcast Cable Holdings, LLC* (2007) 151 Cal App. 1224.

In the event this Court requires pleading clarity, then leave to file an amendment can provide such clarity.

### iii)    Nextiva has a claim under the Unfair Practice Act.

j2 frames their argument regarding the "free trial" by mischaracterizing how the FACC describes j2's practice of using "free trials". Cal Bus & Prof Code §§ 17043 and 17044.

A free trial that simply provides a discount for a single use product (such as a can of soda) is clearly not actionable. But here j2's free trial is used to induce the party into acquiring a telephone number that cannot then be ported. It is j2's clear desire to bind customers to a non-portable telephone numbers which constitutes the unfair practice. *Fishermans Wharf Bay Cruise Group vs. Superior Court* (2003) 114

**OPPOSITION TO PLAINTIFFS' MOTION TO DISMISS and/or MOTION TO STRIKE**

Cal App 4th 309.

## IV. NEXTIVA HAS ADEQUATELY PLED THAT J2 IS LIABLE UNDER THE UNFAIR COMPETITION CLAIM AS NEXTIVA HAS SUFFERED A COMPETITIVE INJURY DUE TELEPHONE NUMBER NON-PORTABILITY

j2 next argues that Nextiva has not suffered an "injury in fact" under Bus & Prof Code §§17200, et seq. (Motion at 10).

The FACC presents a detailed template that j2 does not provide telephone number portability.  Also the FACC clearly alleges that number portability harms Nextiva. (See FACC at ¶176 stating …This contractual condition [the j2 user agreement] prevents the porting of the customer's telephone number to a competitive provider…; FACC at ¶179, …j2's refusal to port numbers acts as a prohibition that prevents consumers from purchasing competitive fax services…).

To the extent that the Court requires substantive proof at this phase of the pleadings, Nextiva has attached documents from the FCC (which are in the public domain and judicially noticeable) where consumers document their experiences of the j2 non-porting provisions (see RJN 5).  Nextiva also has attached herewith Declaration of Josh Lesavoy documenting where consumers request to port numbers from j2 to Nextiva was denied resulting in loss of new business.

## V. CONCLUSION

Nextiva has adequately pled claims of inequitable conduct and harm caused by non-portability of telephone numbers.  Nextiva respectfully requests that this Court deny J2's motion and allow these claims proceed to trial.

1    Dated:   October 28, 2013                     COTMAN IP LAW GROUP, PLC

2                                                               s/Obi Iloputaife

3                                                   By _____.

4                                                   Obi Iloputaife (Bar No. 192271)
                                                    Daniel Cotman (Bar No. 218315)
5                                                   Cotman IP Law Group, PLC
                                                    117 E. Colorado Boulevard, Suite 460
6                                                   Pasadena, CA  91105
7                                                   (626) 405-1413/FAX (626) 628-0404

8
                                                    J. Curtis Edmondson (CSBN 236105)
9                                                   Law Offices of J. Curtis Edmondson
10                                                  Venture Commerce Center
                                                    3699 NW John Olsen Place
11                                                  Hillsboro, OR 97124
12                                                  (503) 336-3749
                                                    (503) 482-7418 fax
13

14                                                  *Attorneys for Defendant and Counter*
15                                                  *Claimant Nextiva, Inc.*

16

17

18

19

20

21

22

23

24

25

26

27

28

**OPPOSITION TO PLAINTIFFS' MOTION TO DISMISS and/or MOTION TO STRIKE**