Robert A. Sacks (SBN 150146)
sacksr@sullcrom.com
Brian R. England (SBN 211335)
englandb@sullcrom.com
Edward E. Johnson (SBN 241065)
johnsonee@sullcrom.com
SULLIVAN & CROMWELL LLP
1888 Century Park East, Suite 2100
Los Angeles, California 90067-1725
Tel.:  (310) 712-6600
Fax:   (310) 712-8800

Frank L. Bernstein (SBN 189504)
fbernstein@kenyon.com
KENYON & KENYON LLP
1801 Page Mill Road, Suite 210
Palo Alto, California 94304-1216
Tel.:  (650) 384-4700
Fax:   (650) 384-4701

*Attorneys for Plaintiffs j2 Global, Inc. and Advanced Messaging Technologies, Inc.*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| j2 GLOBAL COMMUNICATIONS, INC. AND ADVANCED MESSAGING TECHNOLOGIES, INC., <br><br>  Plaintiffs, <br> v. <br> NEXTIVA, INC., <br><br>  Defendant. | Case No. CV 11-06450 DDP (AJWx) <br><br> **PLAINTIFFS AND COUNTERCLAIM-DEFENDANTS j2 GLOBAL, INC. AND ADVANCED MESSAGING TECHNOLOGIES, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COUNTS XII AND XIII OF DEFENDANT'S COUNTERCLAIMS PURSUANT TO F.R.C.P. 12(b)(6)** |
| NEXTIVA, INC., <br><br>  Counterclaimant, <br> v. <br> j2 GLOBAL COMMUNICATIONS, INC. AND ADVANCED MESSAGING TECHNOLOGIES, INC., <br><br>  Counterclaim-Defendants. | |

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ..........................................................................................................1

BACKGROUND ...........................................................................................................2

ARGUMENT .................................................................................................................4

    I.    Legal Standard. ..........................................................................................4

    II.    Defendant's Unlawful Tying Claim Lacks Both Legal and Factual Support and Should Be Dismissed. ...............................................................4

        A.    j2's eFax Service and the Fax Numbers Used for the Service Are the Same Product and Are Not in Distinct Markets..........................................6

        B.    Nextiva Cannot Plausibly Allege that the Liquidated Damages Clause of the eFax Customer Agreement Constitutes Tying................................7

        C.    Nextiva Has Failed to Allege Any of the Elements Required for Unlawful Tying. ........................................................................................8

    III.    Nextiva Fails to State a Claim Under the Unfair Practices Act. ............................12

CONCLUSION............................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Ashcroft* v. *Iqbal*
  556 U.S. 662 (2009) ............................................................................................... 4

*Bell Atlantic Corp.* v. *Twombly*
  550 U.S. 544 (2007) ................................................................................... 4, 10, 13

*CCBN.Com, Inc.* v. *Thomson Fin., Inc.*
  270 F. Supp. 2d 146 (D. Mass. 2003) .................................................................. 10

*Clegg* v. *Cult Awareness Network*
  18 F.3d 752 (9th Cir. 1994) ................................................................................... 4

*Hirsh* v. *Martindale–Hubbell, Inc.*
  674 F.2d 1343 (9th Cir. 1982) ........................................................................... 6, 7

*Image Technical Serv., Inc.* v. *Eastman Kodak Co.*
  903 F.2d 612, 615 (9th Cir.1990), *aff'd*, 504 U.S. 451 (1992) ............................ 5

*In re Peerless Sys. Corp. Sec. Litig.*
  182 F. Supp. 2d 982 (S.D. Cal. 2002) ................................................................... 4

*Jefferson Parish Hospital Dist. No. 2* v. *Hyde*
  466 U.S. 2 (1984) ................................................................................................... 6

*Mann* v. *City of Tucson, Dep't of Police*
  782 F.2d 790 (9th Cir. 1986) ................................................................................. 5

*McGlinchy* v. *Shell Chem. Co.*
  845 F.2d 802 (9th Cir. 1988) ........................................................................... 4, 12

*Sub Corp.* v. *Best Buy Co.*
  365 Fed. Appx. 767 (9th Cir. 2010) ............................................................... 12, 13

*Tele Atlas N.V.* v. *Navteq Corp.*
  397 F. Supp. 2d 1184 (N.D. Cal. 2005) ................................................................ 9

**CALIFORNIA CASES**

*Corwin* v. *Los Angeles Newspaper Serv. Bureau, Inc.*
  4 Cal. 3d 842 (1971) .............................................................................................. 5

*Fisherman's Wharf Bay Cruise Corp.* v. *Superior Court*
 114 Cal. App. 4th 309 (2003) .................................................................................. 12

*Freeman* v. *San Diego Ass'n of Realtors*
 77 Cal. App. 4th 171 (1999) ................................................................................. 5, 6

*Morrison* v. *Viacom*
 66 Cal. App. 4th 534 (1998) ................................................................................ 9, 11

*RLH Industries, Inc.* v. *SBC Communications, Inc.*,
 133 Cal. App. 4th 1277 (2005) ............................................................................ 7, 8, 9

*Suburban Mobile Homes, Inc.* v. *AMFAC Communities, Inc.*
 101 Cal. App. 3d 532 (1980) ................................................................................ 5, 11

*UAS Mgmt., Inc.* v. *Mater Misericordiae Hosp.*
 169 Cal. App. 4th 357 (2008) ............................................................................... 9, 8

**FEDERAL STATUTES**

Fed. R. Civ. P. 12(b)(6) ................................................................................................. 1, 3, 4

Federal Clayton Act, 15 U.S.C. § 14 ................................................................................... 5

Federal Sherman Act, 15 U.S.C. § 1 .................................................................................... 5

**CALIFORNIA STATUTES**

Cal. Bus. & Prof. Code § 16720 .............................................................................. 1, 3, 4, 9

Cal. Bus. & Prof. Code § 16727 ................................................................................. passim

Cal. Bus. & Prof. Code § 17000 ..................................................................................... 1, 4

Cal. Bus. & Prof. Code § 17043 ................................................................................... 12, 13

Cal. Bus. & Prof. Code § 17044 ................................................................................... 12, 13

SULLIVAN & CROMWELL LLP                                        PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMS

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs j2 Global, Inc. and Advanced Messaging Technologies, Inc. (together, "j2") respectfully submit this Memorandum in support of their Motion to Dismiss Counts XII and XIII of Defendant Nextiva, Inc.'s ("Nextiva") Second Amended Counterclaims ("SAC") (Dkt. No. 76) pursuant to Fed. R. Civ. P. 12(b)(6).

## INTRODUCTION

In its Second Amended Counterclaims, Nextiva asserts, *inter alia*, that j2 has engaged in prohibited restraints on competition under Cal. Bus. & Prof. Code §§ 16720, *et seq.*, 16727, *et seq.*, and unfair practices under Cal. Bus. & Prof. Code §§ 17000, *et seq*. These claims are based on j2 allegedly refusing to permit customers to "port" their fax numbers to a different provider if the customers cancel their service with j2. However, j2 is not obligated to permit porting—Nextiva's allegation that j2 is required to permit porting by FCC rules is simply wrong. But even if Nextiva's theory had some basis—and it does not—Nextiva has failed to state a claim. Nextiva's claim under Sections 16720 and 16727 purports to allege that j2 has engaged in unlawful tying, but Nextiva only vaguely alleges what the tying and tied products might be and fails to allege any of the elements required to show illegal tying. And its Section 17000 claim requires it to specifically plead facts that would establish that j2 is selling below cost, but Nextiva alleges only that j2 offers a plain-vanilla free trial period—hardly enough to establish an antitrust violation. These claims must be dismissed.

After multiple meet and confer sessions and after the Court has twice granted stipulations giving Nextiva leave to amend its counterclaims, Nextiva continues to take a shotgun approach to pleading. At once, Nextiva alleges that j2's fax service is improperly free and is uncompetitively overpriced, and that the porting provision of j2's Customer Agreement was both disclosed to customers and was hidden from them. In fact, the porting policy is disclosed to each and all eFax

customers in all capital letters before they sign up for service, as demonstrated by a cursory review of the very document attached to Nextiva's counterclaims. Now in its third incarnation, Nextiva's pleading contains more counterclaims than ever, but has not adequately pled the porting claims. Given multiple opportunities to replead its deficient claims, Nextiva persists in asserting vague and conflicting allegations. For this reason, j2 now requests dismissal of the claims with prejudice.

## BACKGROUND

j2 is a Los Angeles-based company that provides messaging and communications services, including fax-to-email services. j2 filed its First Amended Complaint on July 16, 2013, asserting that Nextiva's fax-to-email services infringe U.S. Patent Numbers 6,208,638, 6,350,066, 7,020,132, and 6,020,980 (the "Patents-in-Suit"). Nextiva answered and filed counterclaims on August 8, 2013. (Dkt. No. 57.) Thereafter, j2 met and conferred with Nextiva in advance of filing a motion to dismiss certain counterclaims that were insufficiently pled. Agreeing to replead its counterclaims, Nextiva joined j2 in a stipulation to grant Nextiva leave to file amended counterclaims. (Dkt. No. 65.)

Nextiva filed its amended counterclaims on September 23, 2013, and while it abandoned its tying counterclaim, the bulk of the counterclaims consisted of a rehash of Nextiva's earlier pleadings. (Dkt. No. 68.) j2 again met and conferred with Nextiva regarding the still-deficient counterclaims, and the parties determined that j2 should proceed with a motion to dismiss. On October 15, 2013, j2 filed its motion to dismiss, which Nextiva nominally opposed, mostly by seeking leave in its opposition to further amend its counterclaims and delineating specific additional facts that it would include if granted a further amendment. (Dkt. Nos. 70, 71.) After further discussions, the parties agreed that Nextiva should be granted another opportunity to cure the defects in its counterclaims and filed a stipulation to that effect. (Dkt. No. 74.) Accordingly, on November 15,

2013, Nextiva filed its Third Amended Answer and Second Amended Counterclaims against j2. (Dkt. No. 76.)

Nextiva's newest counterclaims do contain additional facts in support of its inequitable conduct counterclaim and, on that basis, j2 no longer seeks Rule 12(b)(6) dismissal of this claim (Count IX in the Third Amended Answer and Second Amended Counterclaims). But despite multiple opportunities to replead its porting-related claims as described above, many of the allegations Nextiva now submits are substantially unchanged and many of its claims remain unsupported by well-pled factual allegations. Moreover, having previously abandoned its purported illegal "tying" claim, Nextiva now seeks to revive it in this third restatement of its claims. Accordingly, j2 now seeks dismissal of those claims with prejudice.

Count XII of Nextiva's Counterclaims purports to allege a California state law claim for unlawful restraints on competition under California's Cartwright Act, Cal. Bus. & Prof. Code §§ 16720, *et seq.*, 16727, *et seq.* This claim appears to be based on Nextiva's allegation that j2 has engaged in anti-competitive conduct that has "restrained the free transfer of telephone numbers that the consumer uses to receive virtual faxes." (*Id.* ¶ 221.) j2's customers agree, as part of the eFax Customer Agreement, which is easily accessible online and provided to them before they sign up for the service, that if they decide to terminate their eFax service, they will relinquish their j2-owned fax numbers back to j2. (*See* SAC, Ex. 13.) If a customer were to breach the agreement and port the fax number to another entity, the customer is required to pay liquidated damages to j2 in what Nextiva characterizes as a "porting request penalty." (SAC ¶ 218.) Nextiva alleges that this contract term presents a "Hobson's choice" to customers who wish to transfer their fax number to a competing fax provider, "substantially lessen[ing] competition for the delivery of electronic facsimile documents in the State of California and nationally." (*Id.* ¶ 219-220.)

Count XIII purports to allege a state law claim for violation of California's Unfair Practices Act ("UPA"), Cal. Bus. & Prof. Code §§ 17000, *et seq.* This claim appears to be based on Nextiva's allegations that j2 sells its fax service "as an unlawful loss leader" or as a "below cost offer." (SAC ¶ 226, 228.) Nextiva alleges that j2's free trial offer "has a tendency to mislead and induce consumers" because it "locks the consumer to j2's service." (*Id.* ¶ 228, 230.)

# ARGUMENT

## I. Legal Standard.

Under Fed. R. Civ. P. 12(b)(6), a complaint may only survive a motion to dismiss if it alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007). While the Court must accept all well-pleaded factual allegations, the Court is not required to (and cannot) accept as true "mere conclusory statements." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009); *In re Peerless Sys. Corp. Sec. Litig.*, 182 F. Supp. 2d 982, 987 (S.D. Cal. 2002) (legal conclusions need not be taken as true merely because they are cast in the form of factual allegations); *Clegg* v. *Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994). Accordingly, "conclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim." *McGlinchy* v. *Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988). Under these well-established standards, Counts XII and XIII of Defendant's Counterclaims should be dismissed.

## II. Defendant's Unlawful Tying Claim Lacks Both Legal and Factual Support and Should Be Dismissed.

Count XII asserts that j2 is engaged in "Vertical Restraints on Trade and Tying" in violation of the Cartwright Act, Cal. Bus. & Prof. Code §§ 16720, *et seq.*, and Cal. Bus. & Prof. Code §§ 16727, *et seq.*[1] Section 16720 was patterned

---

[1] Nextiva asserted a violation of the Cartwright Act based on a "tying" theory in its original counterclaims. (Dkt. No. 59.) In its First Amended Counterclaims, however, Nextiva removed all references to tying, apparently

- 4 -

after the Federal Sherman Act, 15 U.S.C. § 1, and Section 16727 was patterned on section 3 of the Federal Clayton Act, 15 U.S.C. § 14.  *Corwin* v. *Los Angeles Newspaper Serv. Bureau, Inc.*, 4 Cal. 3d 842, 852-53 (1971).  Federal decisions interpreting the Sherman Act and the Clayton Act are applicable to interpreting these sections.  *Id.*; *see also Freeman* v. *San Diego Ass'n of Realtors*, 77 Cal. App. 4th 171, 183 n.9 (1999) ("In analyzing Freeman's Cartwright Act claims, we frequently examine federal precedent because the Cartwright Act is similar in language to the Sherman Act.").

It appears that Nextiva's Cartwright Act claim is based on the allegation that j2 is improperly "tying" its fax service to the phone numbers required to provide such service.[2]  "A tying arrangement is 'an agreement by a party to sell one product but only on the condition that the buyer also purchase a different (or tied) product, or at least agree that he will not purchase that product from any other supplier.'"  *Image Technical Serv., Inc.* v. *Eastman Kodak Co.*, 903 F.2d 612, 615 (9th Cir. 1990) (quoting *N. Pac. Ry. Co.* v. *United States*, 356 U.S. 1, 5–6 (1958)), *aff'd*, 504 U.S. 451 (1992).  Such an arrangement is unlawful when it "den[ies] competitors free access to the market for the tied product."  *Suburban Mobile Homes, Inc.* v. *AMFAC Communities, Inc.*, 101 Cal. App. 3d 532, 542 (1980).

---

conceding that there is no possible tying violation.  (Dkt. No. 68.)  Now it seeks to revive them, but has not fixed any of the deficiencies in the original complaint.

[2]  To the extent the claim is based on anything else, it should be dismissed as impermissibly vague.  Nextiva fails to specifically allege which section of the Cartwright Act j2 is allegedly violating, instead just sweeping in the entire statute by saying "*et seq.*"  Although j2 has done its best to infer what theory Nextiva is asserting and respond accordingly, this approach fails to give j2 fair notice of what Nextiva's claim is.  *See Mann* v. *City of Tucson, Dep't of Police*, 782 F.2d 790, 793 (9th Cir. 1986) ("Although we must, in general, accept the facts alleged in the complaint as true, wholly vague and conclusory allegations are not sufficient to withstand a motion to dismiss.").

- 5 -

As an initial matter, Nextiva's proposition that fax services and fax numbers can be unlawfully "tied" to each other is nonsense. A fax service and a fax number are inseparable: j2 and its competitors cannot sell fax-to-email services without a fax number, and a customer's use of a fax number is an indispensable part of any fax service. Moreover, there is no allegation that j2 is in the business of selling fax numbers, much less that j2 has or could ever have market power over fax numbers. Nextiva's allegations simply do not say "tying" and should be dismissed out of hand.

Nextiva's tying claim should also be dismissed for at least three more independent reasons: (i) the allegedly tied product and service exist in the same market; (ii) the eFax Customer Agreement's liquidated damages clause does not constitute a tying arrangement as a matter of law; and (iii) the Counterclaims fail to adequately plead the elements of unlawful tying.

### A. j2's eFax Service and the Fax Numbers Used for the Service Are the Same Product and Are Not in Distinct Markets.

"The threshold element for a tying claim is the existence of separate products or services in separate markets." *Freeman* v. *San Diego Ass'n of Realtors*, 77 Cal. App. 4th 171, 184 (1999) (citing *Jefferson Parish Hospital Dist. No. 2* v. *Hyde*, 466 U.S. 2, 21 (1984)). Although Nextiva purports to allege that a fax number is a distinct product from a fax service, a nonsensical allegation on its face, (SAC ¶ 216), its tying claim still must fail because it has not alleged separate markets for fax numbers and fax services. Because tying arrangements are prohibited only when they create a risk of extending market power from one market to an entirely different market, "a tying arrangement cannot exist unless two separate product markets have been linked." *Jefferson Parish*, 466 U.S. at 21; *see also Hirsh* v. *Martindale–Hubbell, Inc.* 674 F.2d 1343, 1350 (9th Cir. 1982) ("The existence of separate markets for the alleged tying and tied products is crucial to a finding of an unlawful tying arrangement.").

Nowhere in its Counterclaims does Nextiva allege a distinct market for either j2's eFax service or for its fax numbers. Rather, Nextiva's Counterclaims appear to concede that the alleged tying and tied markets are not distinct. Nextiva alludes to a tying market when it alleges that j2 has "significant economic power in the marketplace for providing 'virtual faxing.'" (SAC ¶ 212.) Later, Nextiva alleges that the effect of j2's alleged tying is to "substantially lessen competition for the delivery of electronic facsimile documents in the State of California," which presumably is the tied market. (SAC ¶ 220.) At best, Nextiva may be alleging that the tied market is a subset of the tying market, which would be insufficient as a matter of law to state a claim. In any event, there is no allegation of a "separate market" for fax numbers, which would be required for an illegal tying claim. *Hirsh* v. *Martindale–Hubbell, Inc.* 674 F.2d 1343, 1350 (9th Cir. 1982). Nextiva has failed to meet even the threshold for a tying claim.

### B. Nextiva Cannot Plausibly Allege that the Liquidated Damages Clause of the eFax Customer Agreement Constitutes Tying.

Nextiva does not dispute that j2 customers who choose to use a j2-owned and provided fax number agree up front that they will relinquish the number back to j2 if they terminate their fax service. j2's arrangement to let customers use its fax numbers is no different than a cable company providing cable boxes to its customers. If a cable customer canceled its contract, one would expect that the customer would return the cable box to the cable company. j2's arrangement is even more innocuous because customers are allowed to use their own numbers if they wish. Nextiva's attempt to characterize such an arrangement as unlawful is nonsensical.

In *RLH Industries, Inc.* v. *SBC Communications, Inc.*, plaintiff RLH Industries, Inc. ("RLH") alleged that defendant Pacific Bell Telephone Company ("PacBell") was engaged in illegal tying by requiring local telephone service customers to also obtain high voltage protection ("HVP"). 133 Cal. App. 4th 1277,

- 7 -

1282 (2005). Customers could either sign a 20-year lease of an HVP device from PacBell or could separately purchase a device from an approved HVP device maker. *Id.* If customers did choose to sign a lease, they could not later purchase their own HVP device without paying a "hefty termination fee." *Id.* at 1285. RLH contended that this arrangement constituted illegal tying. *Id.* The court disagreed, finding that the termination fee in fact "preserves competition because PacBell's customers may avoid the purportedly onerous lease terms by choosing to buy their own HVP devices at the outset." *Id.*

Like the plaintiff in *RLH Industries*, Nextiva alleges that a contractual provision for a "$500.00 porting fee" constitutes an illegal tying arrangement. (SAC ¶¶ 220, 223.) This allegation is incorrect. As the court held in *RLH Industries*, where customers are advised of such a fee at the outset of their decision to purchase services, and where that customer has other options for obtaining the allegedly tied product, there is no tying. 133 Cal. App. 4th at 1285. Such terms do not harm competition because customers have the free choice to purchase the allegedly tied product elsewhere. *Id.* at 1286 ("PacBell's decision not to approve RLH devices as often as RLH would like may harm RLH as an individual *competitor*, but it does not harm *competition*." (emphasis in original)). Because Nextiva cannot plausibly allege that the liquidated damages clause harms competition, its tying claim must fail.

### C. Nextiva Has Failed to Allege Any of the Elements Required for Unlawful Tying.

"A tying arrangement typically involves a seller with monopoly or other extensive market power in a given product, who then refuses to sell that product unless the buyer buys (or agrees not to buy from seller's competitor) a separate product over which the seller does not have extensive independent market power." *UAS Mgmt.*, 169 Cal. App. 4th at 366 (citing *Cascade Health Solutions* v. *PeaceHealth* 515 F.3d 883, 912 *et seq.* (9th Cir. 2008)). Nextiva asserts that j2's

- 8 -

alleged tying constitutes a *per se* violation of the Cartwright Act. The specific elements of a *per se* violation under Section 16720 are as follows: "(1) a tying agreement, arrangement or condition existed whereby the sale of the tying product was linked to the sale of the tied product or service; (2) the party had sufficient economic power in the tying market to coerce the purchase of the tied product; (3) a substantial amount of sale was effected in the tied product; and (4) the complaining party sustained pecuniary loss as a consequence of the unlawful act." *Morrison* v. *Viacom*, 66 Cal. App. 4th 534, 541-42 (1998) (quoting *Classen* v. *Weller*, 145 Cal. App. 3d 27, 37–38 (1983)). A per se violation of Section 16727 requires that both elements (1) and (4) above be established along with *either* element (2) or (3).[3] *Id.* at 542. Nextiva has not come close to alleging any one of these required elements.

The first element requires that the sale of the tying product be linked to the sale of the tied product. Nextiva does not allege that j2 sells, leases, or otherwise disposes of fax numbers. Instead, Nextiva only alleges that customers "acquire" fax numbers from j2 or that j2 "provides" fax numbers. (*See, e.g.*, SAC ¶ 217.) Whether Nextiva is alleging that the fax number is the tying or tied product, there is clearly no "sale" of fax numbers as required by this element. Moreover, as provided in the eFax Customer Agreement, j2 allows customers to port in their own fax numbers. (SAC, Ex. 13, at 147.) There is thus no negative effect on the hypothetical market for fax numbers because eFax customers may acquire a fax number from any competitor in this market. The fax service and fax number are therefore not "linked" within the meaning of this element. *RLH Indus.*,

---

[3] If Nextiva is alleging that j2's fax service is the tying product, Cal. Bus. & Prof. Code § 16727 clearly does not apply. Section 16727 "does not concern the sale of services and, accordingly, is not applicable in the present case." *UAS Mgmt., Inc.* v. *Mater Misericordiae Hosp.*, 169 Cal. App. 4th 357, 365 (2008); *see also Tele Atlas N.V.* v. *Navteq Corp.*, 397 F. Supp. 2d 1184, 1192 (N.D. Cal. 2005) ("California Business and Professions Code section 16727 only forbid[s] tying arrangements with respect to tangible goods.").

133 Cal. App. 4th at 1284 (services not linked where "customers have a choice among competitors").

The second element requires Nextiva to allege that j2 has sufficient economic power in the tying market to coerce the purchase of fax numbers. In an attempt to satisfy this element, Nextiva has conclusorily alleged that j2 is both "one of the largest independent providers of unified communications or 'unified messaging' . . . services" and "the largest provider of 'virtual fax' telephone numbers." (SAC ¶ 212.) Nextiva follows with another conclusory allegation that j2 "has sufficient economic power in the marketplace for providing 'virtual faxing.'" (*Id.*) Again, it appears that Nextiva cannot make up its mind about whether j2's fax service is the tying service or the tied service.

Pleading standards "require[] more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nextiva's bare allegations that j2 is either a dominant provider of fax numbers or of fax services and that it has "sufficient power" in the marketplace are unsupported and insufficient. *CCBN.Com, Inc.* v. *Thomson Fin., Inc.*, 270 F. Supp. 2d 146, 155 (D. Mass. 2003) ("More must be alleged to satisfy the market power element . . . than the mere assertion that such power exists."). Nextiva cites a 2012 report that says j2 has a 39.8% of the "individual Internet fax services market segment," (SAC ¶ 156), but it does not allege that this is the relevant market or that this market share gives rise to monopoly power. Nextiva has also failed to allege that j2 possesses the power to control prices or exclude competition, or even whether there are competitors in this market or market barriers to entry. *CCBN.Com*, 270 F. Supp. 2d at 155. Because Nextiva has made no allegations regarding the market for fax services, it cannot satisfy this element of a tying claim.

The third element of a tying claim examines whether a substantial volume of sales was actually effected in the tied market. "To plead this element,

1  appellants must allege facts to show that 'a total volume of business, substantial
2  enough in terms of dollar-volume so as not to be merely *de minimis*, is foreclosed
3  to competitors by the tie.'" *Morrison*, 66 Cal. App. 4th at 542 (quoting *Corwin*, 4
4  Cal. 3d at 856-57).  Not surprisingly, Nextiva does not even attempt to allege the
5  third element, and for good reason:  neither j2 nor any of its competitors sells fax
6  numbers.  *See id.* at 543 ("A transaction cannot restrain trade when no competitor
7  exists from whom to purchase the tied product.").  Even if there were a market for
8  fax numbers, j2 would not effect a substantial amount of sales in the tied market
9  because it does not sell numbers.  If Nextiva is alleging that customers would
10  normally get their fax numbers for free, its claim still must fail because j2's
11  practice would still have absolutely no effect on competition.  *See Morrison*, 66
12  Cal. App. 4th at 544 (Appellants concession that customers would otherwise not
13  buy tied product because it is available for free "establishes that the challenged
14  practice has no effect on competition in the tied product market.")  And to the
15  extent Nextiva is alleging that j2's fax service is the tied item, it also has not
16  alleged that a substantial number of sales of the fax service have been effected by
17  the alleged tying arrangement.  Nextiva therefore cannot satisfy the third element
18  of its tying claim.

19  Finally, to satisfy the injury element, Nextiva alleges only that it has
20  "suffered damage" as a result of j2's alleged tying arrangement.  (SAC ¶ 224.)
21  This allegation is also insufficient.  To prove damages, Nextiva must at the very
22  least establish "with reasonable probability the existence of some causal
23  connection between defendant's wrongful act and some loss of the anticipated
24  revenue." *Suburban Mobile Home*, 101 Cal. App. 3d at 545.  Nextiva's conclusory
25  statement has failed to sufficiently allege such a connection.  Although Nextiva
26  cursorily alleges that j2's business practices have hurt it, it has alleged zero facts to
27  support this contention.  *See Morrison*, 66 Cal. App. 4th at 548 ("Appellants failed
28  to allege antitrust injury . . . because they have failed to allege any facts to show

- 11 -

they suffered an injury which was *caused* by restraints on competition." (emphasis in original)). These bare and unsupported allegations are not sufficient to state a claim.

### III. Nextiva Fails to State a Claim Under the Unfair Practices Act.

Nextiva fails to identify the basis for its Unfair Practices Act ("UPA") claim, but references to selling fax numbers below cost and as loss leaders suggest that Nextiva is asserting violations of Section 17043 and 17044. (SAC ¶¶ 226, 228.) Nextiva has not adequately pled any such violation.

*First*, the suggestion that it is unlawful to offer a free trial is meritless. The UPA forbids a narrow set of predatory pricing practices; it does not preclude companies from competing with one another or from offering commonplace promotions like a free trial. Nextiva's assertion that a company violates the antitrust laws and subjects itself to treble damages by running a simple, free trial promotion should be rejected out of hand. To hold otherwise would be to subject all companies who offer a free trial to such claims. That is not the law.

*Second*, to show that j2 is selling fax numbers below cost, Nextiva must allege, "in other than conclusionary terms, the defendant's sales price, costs in the product, and cost of doing business." *Fisherman's Wharf Bay Cruise Corp.* v. *Superior Court*, 114 Cal. App. 4th 309, 322 (2003). Nextiva has alleged only that the 30-day free trial that j2 offers is below cost and is a loss leader, but has not alleged a single fact to support these two conclusions. These conclusory allegations are insufficient to withstand a motion to dismiss. *McGlinchy*, 845 F.2d at 810.

*Third*, Nextiva must allege that j2 acted with the specific intent to cause harm. "To violate California Business and Professions Code §§ 17043 and 17044, 'a company must act with the *purpose*, *i.e.*, the desire, of injuring competitors or destroying competition.'" *Sub Corp.* v. *Best Buy Co.*, 365 Fed. Appx. 767, 768 (9th Cir. 2010) (emphasis in original) (quoting *Cel-Tech*

*Commc'ns, Inc.* v. *Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 174-75, 178 (1999)). Nextiva's conclusory allegation that "j2's intent is to injure competition," (SAC ¶ 229), is insufficient. *Twombly*, 550 U.S. at 555 ("[A] formulaic recitation of the elements of a cause of action will not do.") Nextiva has failed to allege basic elements of Section 17043 and Section 17044 claims and its claim should be dismissed. *Sub Corp.*, 365 Fed. Appx. at 769 ("[G]eneral, conclusory allegations . . . are not sufficient to satisfy the pleading requirements under §§ 17043-44.")

## CONCLUSION

For the foregoing reasons, j2 respectfully requests that the Court dismiss Counts XII and XIII of Nextiva's Second Amended Counterclaims with prejudice.

Dated:  January 17, 2014                    Respectfully submitted,

/s/ Robert A. Sacks
Robert A. Sacks (SBN 150146)
Brian R. England (SBN 211335)
Edward E. Johnson (SBN 241065)
SULLIVAN & CROMWELL LLP
1888 Century Park East, Suite 2100
Los Angeles, California 90067-1725
(310) 712-6600
(310) 712-8800 facsimile

Frank L. Bernstein (SBN 189504)
KENYON & KENYON LLP
1801 Page Mill Road, Suite 210
Palo Alto, California 94304-1216
(650) 384-4700
(650) 384-4701 facsimile

*Attorneys for Plaintiffs and Counterclaim-Defendants j2 Global, Inc. and Advanced Messaging Technologies, Inc.*